UNITED STATES of America,
Plaintiff-Appellee,

v.

**Robert HANAHAN and Paul Panczko,
Defendants-Appellants.**

Nos. 85–1473, 85–2144 and 85–2149.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1986.

Decided Aug. 5, 1986.

---

William Theis, Chicago, Ill., for defendants-appellants.

William C. Bryson, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and BAUER and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

Defendants Robert Hanahan and Paul Panczko were convicted of the unlawful possession of firearms by a convicted felon, in violation of 18 U.S.C.App. § 1202(a). The district court sentenced Hanahan to five years probation. After finding Panczko to be a dangerous special offender within the meaning of 18 U.S.C. § 3575, the district court sentenced him to ten years imprisonment. We affirm.

## I.

On December 3, 1979, Chicago police officers saw defendant Paul Panczko driving a blue and white Cadillac in the Chicago area. Panczko was accompanied by two passengers, Robert Siegel and Robert Pullia. The police officers followed Panczko as he drove through the northern suburbs. At about 4:00 p.m. Panczko drove his car into the parking lot of a savings and loan association in Des Plaines and parked there. Panczko and his companions left the car in the parking lot, and several police officers remained at that location watching the car.

Several hours later, the officers saw two vehicles enter the parking lot, approach

Panczko's car, and park next to it. One vehicle was a blue van, driven by Hanahan; the other was a Chevrolet sedan, driven by Gerald Tomasczek. Tomasczek got out of the Chevrolet, and four men got out of the van: Hanahan, Panczko, Siegel and Pullia. The men gathered in the area between the van and the Chevrolet for a few moments and talked together. Tomasczek opened the trunk of the Chevrolet, and Panczko reached into the trunk and removed an object. A police officer who was conducting the surveillance observed that "the object appeared to be a paper shopping bag with a crowbar sticking out of the top of it." Panczko carried the bag to the van and placed it inside the rear compartment.

After Panczko had put the bag in the van, the five men got back into their vehicles; Panczko, Siegel, and Pullia got into the Cadillac; Hanahan got into the van; and Tomasczek got into the Chevrolet. The men drove the three vehicles out of the parking lot in single file, with Tomasczek's Chevrolet in the lead, Hanahan's van in the middle, and Panczko's Cadillac in the rear. The officers decided to stop the three vehicles and question the men about their activities. They set up a roadblock with a squad car and one officer turned on his car's siren and flashing lights. Tomasczek's Chevrolet slowed at first, but then hit the police car blocking the road and continued at a high rate of speed. Hanahan followed in his van and continued driving past the roadblock. Panczko's car was stopped near the roadblock.

The police apprehended Panczko and searched his car. They found a pair of gloves and a police scanner tuned to monitor calls from the Des Plaines Police Department and the Cook County Sheriff's Department. After a high speed chase, Tomasczek's car collided with a parked car, and Tomasczek ran from the car. As he left the car, he threw away a hammer and a full-faced rubber mask. When he was apprehended, he was carrying a pair of gloves. The police located an extra set of license plates in his car.

Hanahan's van ultimately wound up in a high school football field where it went into a spin and stalled. Hanahan was arrested and the police searched his van. They found a loaded handgun and a brown paper shopping bag containing a crowbar, two loaded revolvers, two full-faced rubberized masks, an eight-pound sledge hammer, two hats, and a pair of gloves. Two of the three handguns that were seized from the vehicles were found to be stolen.

At trial, Hanahan testified that the guns were not in the van while he was driving it and that he had gone to the bank parking lot simply to buy some grapefruit from Panczko. In his defense and in further support of Hanahan's theory Panczko called one witness who testified that from time to time Panczko purchased fruit at the fruit auction where he worked. The jury convicted both defendants and this appeal followed.

## II.

Hanahan's sole argument on appeal is that his rights under the double jeopardy clause were violated when the government prosecuted him for illegal possession of firearms, since the same transaction had previously served as the basis for the revocation of his parole from a prior conviction. This argument is without merit because revocation of parole and a criminal prosecution can lawfully be based on the same transaction without violating the double jeopardy clause. *Averhart v. Tutsie,* 618 F.2d 479, 483–84 (7th Cir.1980). The double jeopardy clause protects a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); its protections are not triggered by the revocation of parole. A parole revocation proceeding is an administrative proceeding designed to determine whether a parolee has violated the conditions of his parole, not a proceeding designed to punish a criminal defendant for violation of a criminal law. A criminal prosecution is a judicial proceeding that

vindicates the community's interests in punishing criminal conduct. *U.S. v. Whitney,* 649 F.2d 296, 298 (5th Cir.1981). Because the two proceedings serve different ends, the finding that the defendant no longer merits parole does not foreclose the criminal justice system from punishing the defendant for that conduct.

### III.

■ Panczko argues that the evidence does not show knowing possession of the two handguns identified in the indictment. He argues that the bag was not transparent and that he never looked inside the bag when he was transferring it from the car to the van and that therefore he cannot be found to have knowingly possessed the firearms. A defendant seeking to reverse a conviction for insufficient evidence "bears the heavy burden of showing that the evidence, viewed in the light most favorable to the government, could not have persuaded any rational trier of fact of defendant's guilt beyond a reasonable doubt." *United States v. Balistrieri,* 778 F.2d 1226 (7th Cir.1985). Panczko fails to meet this burden.

The evidence shows that Panczko, in full view of a government witness, picked up and moved the bag containing the firearms, a crowbar, two hammers, gloves, and face masks—all tools to aid either a burglary or an armed robbery. The physical evidence combined with the unusual course of conduct by the five men during that afternoon make it clear that Panczko knowingly joined forces with the others to engage in criminal activity. Given these circumstances, the unusual behavior of the men, and the high speed chase, the jury could properly find that Panczko was aware of the contents of the bag he was moving.

The cases relied upon by Panczko do not require a different result. In *United States v. Gates,* 491 F.2d 720 (7th Cir.1974), we reversed a conviction for possession of an unregistered handgun. In *Gates,* the defendant was arrested as a passenger in an automobile that had a handgun lying on the floor. The defendant's nervous demeanor and the fact that he appeared "to be doing something with his hands" immediately before his arrest was not sufficient proof to establish knowing possession.

In *United States v. Kelley,* 462 F.2d 372 (4th Cir.1972), the defendant was a passenger in a truck carrying a load of stolen property. His presence in the truck was not enough to prove knowing possession. Similarly, in *United States v. Chadwick,* 532 F.2d 773 (1st Cir.1976), *aff'd.* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the court found that the defendant's possessory interest in a footlocker was so slight that the court could not fairly infer knowledge of the contents from that fact. The court found that Chadwick's contact with the footlocker "was less than that of a porter."

Here, however, it is established that Panczko actually held the bag. When he transferred the bag containing the firearms, he had dominion and control over it. He had more than just the "proximity to the object" that was insufficient to uphold the conviction in *Gates.* Similarly, in both *Kelley* and *Chadwick* the defendant lacked the necessary dominion and control. Panczko's control over the bag, together with the circumstances under which he possessed the firearms, were such that the jury could reasonably infer that he was not an unwitting dupe and that he knew precisely what he was carrying.

### IV.

■ Panczko contends that the evidence was insufficient in the government's original petition to properly sentence Panczko as a dangerous special offender pursuant to 18 U.S.C. § 3575.

Prior to trial, the government filed a notice that it would seek to have Panczko sentenced as a dangerous special offender. The notice alleged that Panczko was a "special offender," within the meaning of Section 3575, because he had previously been convicted of two or more felonies. The notice then specified that Panczko had been convicted of the following offenses: counterfeiting (in 1965); bribery and ob-

struction of justice (in 1968); theft from an interstate shipment and robbery (in 1969); various theft offenses, conspiracy, and jeopardizing the life of a bank employee (in 1969); and a Hobbs Act offense (in 1969). The notice stated that Panczko was paroled from his combined sentences for those offenses in December 1978. It further alleged that Panczko was a "dangerous offender," within the meaning of Section 3575, because he had been convicted of at least eleven felonies. The notice stated that Panczko "has also committed numerous crimes against property" and that his criminal background "indicates that he is not subject to rehabilitation." The government then amended the petition after trial to include further allegations of crimes for which Panczko has not been convicted.

It was improper for the government to assert additional allegations after Panczko's conviction. A defendant who knows that the government will seek Section 3575 sentencing will make litigation decisions based on the information the government alleges in its notice. If the government later amends its notice after a finding of guilty, the defendant's position is jeopardized. Here, though, sufficient evidence existed in the original notice to impose this extraordinary penalty on Panczko. Section 3575 requires "setting out with particularity the reasons why such attorney believes the defendant to be a dangerous special offender." The government's notice satisfied this requirement and the government had sufficient ammunition in the original notice to justify dangerous special offender sentencing.

Although we find that the ten-year sentence Panczko received is justified, we do not condone the government's post-conviction introduction of allegations of additional more serious crimes. The petition to have Panczko sentenced as a dangerous special offender listed eleven felony convictions, some with firearms, and the district court correctly characterized Panczko as a danger to the community. The government was simply gilding the lily by including additional allegations.

### V.

Finally, Panczko argues that the sentence is unlawful because the district court improperly relied on a sentencing provision for weapons offenses that was enacted in 1984. In that year, Congress amended the weapons possession statute, 18 U.S.C.App. § 1202, to provide that anyone convicted of that offense who has three prior burglary convictions must be given a no-parole sentence of at least fifteen years. In the course of determining Panczko's sentence the court noted that the 1984 statute "does provide the court with some guide to the legislature's current view of the seriousness of possession of weapons by persons who have been convicted of three robberies or burglaries" (Sentencing Tr. 264–65). Based in part on that factor, the court imposed the ten-year sentence. In referring to the terms of the 1984 statute, the court was merely seeking guidance. The court made it clear that Panczko was not being sentenced under the 1984 law. This is borne out by the fact that Panczko did not receive the 15-year term required by the 1984 statute. The decisions in other courts upholding similar sentences against proportionality challenges show that Panczko's argument is invalid. *See United States v. Adams*, 771 F.2d 783, 790 (3rd Cir.1985) (eight-year sentence); *United States v. Harris*, 755 F.2d 127 (8th Cir.1985) (six-year sentence); *United States v. Davis*, 710 F.2d 104 (3rd Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 505, 78 L.Ed.2d 695 (1983) (12-year sentence).

### VI.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.