710 A.2d 428

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JERRY BLACK, DEFENDANT–APPELLANT.

Argued November 17, 1997—Decided May 14, 1998.

440

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney; *Barbara A. Hedeen,* Assistant Deputy Public Defender, on the letter brief).

*Paul H. Heinzel,* Deputy Attorney General, for plaintiff–respondent (*Peter Verniero,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

STEIN, J.

Defendant's parole was revoked after he violated the conditions of his parole by failing to report to his parole officer, failing to refrain from drug use, and relocating his residence to another state. The primary issue posed by this appeal is whether, in view of the revocation of his parole by the Parole Board, defendant's criminal prosecution for absconding from parole is barred by principles of double jeopardy and fundamental fairness. A collateral issue is whether defendant is entitled to jail credit against his sentence on the absconding conviction for his time in custody from the date of his arrest for absconding until the date of sentencing.

I

In February 1991, defendant-petitioner Jerry Black was sentenced to a three-year custodial prison term following his plea of guilty to one count of distribution of a controlled dangerous substance (CDS) and one count of conspiracy to distribute CDS. Defendant was released on parole in July 1992. When defendant failed to report to his parole officer on October 14, 1992, as required, he was classified the next day as an absconder and a parole warrant issued for his arrest.

Indicted in February 1993 on a single count of third-degree absconding from parole pursuant to *N.J.S.A.* 2C:29–5b, defendant, who had relocated out-of-state, was returned to custody on June 16, 1995. Defendant pled guilty to the absconding charge in return for the State's agreement to recommend a three-year sentence to be served concurrently with defendant's original CDS sentence. On August 22, 1995, the Parole Board issued a Notice of Decision revoking defendant's parole and ordering him to complete the remaining 337 days of imprisonment on the CDS conviction commencing as of the date of his return to custody. On October 6, 1995, the Law Division sentenced defendant on the absconding conviction in accordance with the plea arrangement, crediting him with three days against the absconding sentence for time served. Defendant's Adult Presentence Report suggests that the three-day credit was for time served from June 26, 1995, the date when the bench warrant for defendant's arrest for absconding from parole was executed, until June 28, 1995, the date when a parole detainer was filed. The Presentence Report indicates July 5, 1995, as the date of defendant's formal arrest for absconding. Defendant's briefs, however, all refer to June 26, 1995, as the date of his arrest for absconding.

Defendant appealed his conviction and sentence, contending that his criminal prosecution for absconding from parole should have been barred by state and federal constitutional principles of double jeopardy and by principles of fundamental fairness because the revocation of parole punished him for the same conduct underlying the absconding charge. Defendant further argued that the trial court should have credited him on the absconding sentence with 103 days of time served from the date of his arrest for absconding on June 26, 1995, until the date of his sentencing on October 6, 1995. The Appellate Division rejected both of defendant's contentions. *State v. Black,* 295 *N.J.Super.* 453, 685 *A.*2d 485 (App.Div.1996). We granted defendant's petition for certification. 149 *N.J.* 144, 693 *A.*2d 112 (1997).

## II

### A

█ The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution, made applicable to the States by the Fourteenth Amendment, protects against the reprosecution of a person for the same offense after an acquittal or conviction, and against multiple criminal punishments for the same offense. *Brown v. Ohio,* 432 *U.S.* 161, 165, 97 *S.Ct.* 2221, 2225, 53 *L. Ed.*2d 187, 194 (1977); *North Carolina v. Pearce,* 395 *U.S.* 711, 717, 89 *S.Ct.* 2072, 2076, 23 *L. Ed.*2d 656, 665 (1969). Protection against double jeopardy under the New Jersey Constitution, art. I, ¶ 11, is at least coextensive with the protection afforded by the federal double jeopardy provision. *State v. Womack,* 145 *N.J.* 576, 582, 679 *A.*2d 606, *cert. denied,* — *U.S.* ——, 117 *S.Ct.* 517, 136 *L. Ed.*2d 405 (1996); *State v. Koedatich,* 118 *N.J.* 513, 518, 572 *A.*2d 622 (1990).

The Double Jeopardy Clause's prohibition against multiple punishments clearly protects against a second criminal penalty being imposed in a second criminal prosecution for the same offense. It is not generally implicated by penalties imposed in civil and administrative proceedings. However, the United States Supreme Court held in 1989 that a civil or administrative penalty imposed in addition to a criminal sentence may be found to violate double jeopardy protections when it is based on the same conduct as the criminal charge and is punitive, rather than remedial, in nature. *United States v. Halper,* 490 *U.S.* 435, 446–48, 109 *S.Ct.* 1892, 1900–02, 104 *L. Ed.*2d 487, 500–02 (1989)(holding that where defendant was sentenced to two years imprisonment for Medicare fraud and then assessed civil penalty in excess of $100,000, which bore no relation to government's actual damages, penalty was punitive and thus violated Double Jeopardy Clause).

█ Under *Halper,* the determination of when a civil or administrative sanction constitutes "punishment" for double jeopardy purposes depended on "the purposes actually served by the sanc-

tion in question, not the underlying nature of the proceeding giving rise to the sanction." *Id.* at 447 n. 7, 109 *S.Ct.* at 1901 n. 7, 104 *L. Ed.*2d at 501 n. 7. According to the *Halper* Court, the threshold question was thus whether the sanction as applied to the specific defendant serves the goals of punishment, namely retribution and deterrence. *Id.* at 448, 109 *S.Ct.* at 1901–02, 104 *L. Ed.*2d at 501–02. In applying the *Halper* standard under both the federal and New Jersey constitutions, this Court has found that a sanction may be determined to be punitive if either the law pursuant to which the sanction was imposed was intended by the legislature to impose punishment or the impact of the sanction is punitive. *Womack, supra,* 145 *N.J.* at 583, 679 *A.*2d 606; *see also Doe v. Poritz,* 142 *N.J.* 1, 46, 662 *A.*2d 367 (1995)("An initial inquiry is whether the legislative intent was regulatory or punitive: ... if the former, the inquiry changes to whether the impact, despite the legislative intent to regulate, is in fact punitive....."). Whether the civil or administrative sanction is imposed before or after the criminal prosecution for the same conduct is immaterial to the determination of whether the protection against double jeopardy has been violated. *Womack, supra,* 145 *N.J.* at 585, 679 *A.*2d 606.

Subsequent to oral argument in this appeal, the United States Supreme Court decided *Hudson v. United States,* 522 *U.S.* ——, 118 *S.Ct.* 488, 139 *L. Ed.*2d 450 (1997). In *Hudson,* a five-member majority of the Court largely disavowed the double jeopardy analysis used in *Halper. Id.* at ——, 118 *S.Ct.* at 491, 139 *L. Ed.*2d at 456–57. The majority explained its dissatisfaction with the *Halper* Court's analysis:

> Our opinion in *United States v. Halper* marked the first time we applied the Double Jeopardy Clause to a sanction without first determining that it was criminal in nature.
>
> ....
>
> As the *Halper* Court saw it, the imposition of "punishment" of any kind was subject to double jeopardy constraints, and whether a sanction constituted "punishment" depended primarily on whether it served the traditional "goals of punishment," namely "retribution and deterrence." Any sanction that was so "overwhelmingly disproportionate" to the injury caused that it could not "fairly be said · *solely* to

serve [the] remedial purpose" of compensating the government for its loss, was thought to be explainable as "serving either retributive or deterrent purposes."
. . . .

We believe that *Halper*'s deviation from longstanding double jeopardy principles was ill considered. As subsequent cases have demonstrated, *Halper*'s test for determining whether a particular sanction is "punitive," and thus subject to the strictures of the Double Jeopardy Clause, has proved unworkable. We have since recognized that all civil penalties have some deterrent effect. If a sanction must be "solely" remedial (*i.e.*, entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause. [*Id.* at ―――――, 118 *S.Ct.* at 493–95, 139 *L. Ed* 2d at 459–61 (citations and footnotes omitted).]

The Court thus rejected the rule that whether a sanction is subject to double jeopardy restraints depends on whether that sanction is "punitive," as opposed to "solely" remedial in nature, and reestablished the traditional rule that whether a sanction is subject to double jeopardy restraints depends on whether that sanction essentially constitutes a criminal penalty. *Id.* at ―――――, 118 *S.Ct.* at 493–94, 139 *L. Ed.*2d at 458–59. *See also United States v. Ward,* 448 *U.S.* 242, 248–49, 100 *S.Ct.* 2636, 2641, 65 *L. Ed.*2d 742, 749 (1980)(noting in dicta that Double Jeopardy Clause protects only against two criminal punishments); *Breed v. Jones,* 421 *U.S.* 519, 528, 95 *S.Ct.* 1779, 1785, 44 *L. Ed.*2d 346, 354 (1975)("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution."); *Helvering v. Mitchell,* 303 *U.S.* 391, 398–99, 58 *S.Ct.* 630, 633, 82 *L. Ed.* 917, 921 (1938)("Unless this sanction was intended as punishment, so that the proceeding is essentially criminal, the double jeopardy clause provided for the defendant in criminal prosecutions is not applicable.").

The *Hudson* Court explained that

[w]hether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. *Helvering, supra,* [303 *U.S.*] at 399, 58 *S.Ct.* 630 [at 633], 82 *L. Ed.* 917. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Ward,* [*supra,*] 448 *U.S.* at 248, 100 *S.Ct.* 2636 [at 2641], 65 *L. Ed.*2d 742. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," *id.* at 248–49, 100 *S.Ct.* 2636 [at 2641–42], 65 *L. Ed.*2d 742, as to "transfor[m] what was clearly

intended as a civil remedy into a criminal penalty," *Rex Trailer Co. v. United States,* 350 *U.S.* 148, 154, 76 *S.Ct.* 219 [222], 100 *L. Ed.* 149 (1956).

In making the latter determination, the factors listed in *Kennedy v. Mendoza-Martinez,* 372 *U.S.* 144, 168–69, 83 *S.Ct.* 554 [567–68], 9 *L. Ed.*2d 644 (1963), provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as punishment"; (3) "whether it comes into play only on a finding of *scienter* "; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," *id.* at 169, 83 *S.Ct.* 554 [at 568], 9 *L. Ed.*2d 644, and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, *Ward, supra,* [448 *U.S.*] at 249, 100 *S.Ct.* 2636 [at 2641], 65 *L. Ed.*2d 742 (internal quotation marks omitted).

[*Hudson, supra,* 522 *U.S.* at ——, 118 *S.Ct.* at 493, 139 *L. Ed.*2d at 459.]

Because we find that defendant's argument must fail under both federal and New Jersey double jeopardy jurisprudence as it existed prior to the Supreme Court's decision in *Hudson,* and because application of *Hudson* would only increase the burden on defendant, we need not address whether New Jersey's double jeopardy jurisprudence should be reevaluated in the wake of *Hudson.* Therefore, the inquiry sufficient for the disposition of this appeal remains whether the administrative sanction of parole revocation was intended by the legislature to impose punishment or is punitive in impact in accordance with prevailing federal and New Jersey precedent prior to *Hudson.*

### B

■ The determination of whether the administrative sanction of parole revocation is punitive or remedial in nature requires a closer examination of the goals of the parole system generally, as well as the purposes and impact of parole revocation in particular.

■ As required under *N.J.S.A.* 2C:43–9, "[r]elease of offenders on parole, recommitment and reparole after revocation shall be governed by the 'Parole Act of 1979,'" codified at *N.J.S.A.* 30:4–123.45 to –123.76. The Parole Act provides that the grant or denial

of parole rests with the State Parole Board, *N.J.S.A.* 30:4–123.47, although the burden of proving that an inmate eligible for parole is a likely recidivist who thus should not be released is on the State. *N.J.S.A.* 30:4–123.53(a); *New Jersey Parole Bd. v. Byrne,* 93 *N.J.* 192, 205, 460 *A.*2d 103 (1983). Parole is a period of supervised release "by which a prisoner is allowed to serve the final portion of his sentence *outside* the gates of the institution on certain terms and conditions, in order to prepare for his eventual return to society." *State v. Oquendo,* 262 *N.J.Super.* 317, 324, 621 *A.*2d 24 (App.Div.)(quoting *In re Clover,* 34 *N.J.Super.* 181, 188, 111 *A.*2d 910 (App.Div.1955)), *rev'd on other grounds,* 133 *N.J.* 416, 627 *A.*2d 1127 (1993). The United States Supreme Court has explained that the purpose of parole is "to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed." *Morrissey v. Brewer,* 408 *U.S.* 471, 477, 92 *S.Ct.* 2593, 2598, 33 *L. Ed.*2d 484, 492 (1972). Those descriptions clearly characterize the general purpose of parole as rehabilitative rather than punitive in nature. Furthermore, this Court has observed that under the current New Jersey Code of Criminal Justice (Code), we presume that the punitive aspects of an inmate's sentence have been satisfied by the time he or she becomes eligible for parole. *Byrne, supra,* 93 *N.J.* at 205, 460 *A.*2d 103.

Parolees must agree to abide by specific conditions of parole, including, but not limited to, refraining from the commission of any crime, obtaining permission to change residence, and reporting to an assigned parole officer at reasonable intervals. *N.J.S.A.* 30:4–123.59(b). The United States Supreme Court has observed that the conditions of parole include reporting to parole officers because such officers "are part of the administrative system designed to assist parolees and offer them guidance." *Morrissey, supra,* 408 *U.S.* at 478, 92 *S.Ct.* at 2599, 33 *L. Ed.*2d at 492. Thus, the restrictions placed on parolees are also rehabilitative rather than punitive in purpose.

■ We note that there is no constitutional right to parole. *Greenholtz v. Nebraska Penal Inmates*, 442 *U.S.* 1, 7, 99 *S.Ct.* 2100, 2104, 60 *L. Ed.*2d 668, 675 (1979); *Byrne, supra*, 93 *N.J.* at 208, 460 *A.*2d 103. However, this Court held in *Byrne* that the Parole Act of 1979 created for inmates eligible for parole a protected expectation of parole sufficient to invoke requirements of procedural due process. *Id.* at 206–08, 460 *A.*2d 103. The United States Supreme Court has also "rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.' " *Morrissey, supra*, 408 *U.S.* at 481, 92 *S.Ct.* at 2600, 33 *L. Ed.*2d at 494 (quoting *Graham v. Richardson*, 403 *U.S.* 365, 374, 91 *S.Ct.* 1848, 1853, 29 *L. Ed.*2d 534, 543 (1971)).

The Parole Act empowers the State Parole Board to revoke parole when a parolee violates the conditions of his or her parole. *N.J.S.A.* 30:4–123.60 to –123.62. Although the threat of parole revocation undoubtedly contains a deterrent component, the underlying purpose of parole revocation is consistent with that of the parole system generally. The Supreme Court described the decision-making process underlying a parole revocation decision:

> The first step in a revocation decision thus involves a wholly retrospective factual decision: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? The first step is relatively simple; the second is more complex. The second question involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts.
>
> [*Morrissey, supra*, 408 *U.S.* at 479–80, 92 *S.Ct.* at 2599, 33 *L.Ed.*2d at 493.]

The Court emphasized that parole revocation, controlled by an administrative agency rather than the courts, is not part of a criminal prosecution. *Id.* at 480, 92 *S.Ct.* at 2600, 33 *L. Ed.*2d at 494. Parole revocation deprives an individual of conditional, not absolute, liberty dependent on observance of the special parole restrictions, and every step of the parole process takes place after a complete criminal prosecution. *Ibid.* Thus the Court found that

the "full panoply of rights" due a defendant in a criminal proceeding does not apply to parole revocations. *Ibid.*

Those federal courts that have addressed the question uniformly have held that the double jeopardy clause does not apply to parole revocation proceedings. In *United States v. Hanahan*, 798 *F*.2d 187, 189 (7th Cir.1986), the defendant argued that his prosecution for illegal possession of firearms violated his rights under the double jeopardy clause because the same conduct or transaction had previously served as the basis for the revocation of his parole from a prior conviction. The court held that the revocation of defendant's parole did not trigger double-jeopardy protections. *Ibid.* The court explained:

A parole revocation proceeding is an administrative proceeding designed to determine whether a parolee has violated the conditions of his parole, not a proceeding designed to punish a criminal defendant for violation of a criminal law. A criminal prosecution is a judicial proceeding that vindicates the community's interests in punishing criminal conduct. *U.S. v. Whitney,* 649 *F*.2d 296, 298 (5th Cir.1981). Because the two proceedings serve different ends, the finding that the defendant no longer merits parole does not foreclose the criminal justice system from punishing the defendant for that conduct.

[*Id.* at 189–90.]

In *Standlee v. Rhay,* 557 *F*.2d 1303, 1304 (9th Cir.1977), the appellee had had his parole suspended based on criminal charges for which he was subsequently tried and acquitted. His parole revocation hearing was then re-opened, but the hearing officer concluded that, under the lesser standard of proof required in parole revocation proceedings, the appellee was guilty of six parole violations based on the same conduct for which he had been criminally charged. *Id.* at 1305. The court concluded that the parole revocation was precluded by neither the principle of collateral estoppel nor the double jeopardy clause, reasoning that

[r]evocation of parole is remedial rather than punitive, since it seeks to protect the welfare of parolees and the safety of society. The termination of parole results in a deprivation of liberty and thus is a grievous loss to the parolee. But the harshness of parole revocation does not alter its remedial nature.

[*Id.* at 1306 (citations omitted).]

The court further noted that the extension of procedural due process safeguards to parole revocation proceedings did not man-

date a different result, holding that "[t]he extension of certain constitutional rights to a *proceeding* does not of itself change the nature of the *sanction* which results from that proceeding." *Id.* at 1307.

In *United States v. Brown,* 59 *F*.3d 102 (1995), the Ninth Circuit again held that parole revocation does not constitute "punishment" for double jeopardy purposes. The court stated:

> Revocation of parole or probation is regarded as reinstatement of the sentence for the underlying crime, not as punishment for the conduct leading to the revocation. Parole and probation are part of the original sentence. Their continuance is conditioned on compliance with stated conditions—if the defendant does not comply with those conditions, parole and probation may be revoked. Revocation does not extend the original sentence, it simply alters the conditions under which it is served. The fact that the events which lead to revocation may also constitute a second crime does not mean the revocation itself is punishment for the second crime.
>
> *[Id.* at 104–05 (citations omitted).]

*See also Jonas v. Wainwright,* 779 *F*.2d 1576, 1577 (11th Cir.)(noting Double Jeopardy Clause does not apply to parole revocation proceedings), *cert. denied,* 479 *U.S.* 830, 107 *S.Ct.* 115; 93 *L. Ed.*2d 62 (1986); *Garcia v. United States,* 769 *F*.2d 697, 699–700 (11th Cir.1985)(same); *United States ex rel. Carrasquillo v. Thomas,* 527 *F.Supp.* 1105, 1110 (S.D.N.Y.1981)("[T]he essential purpose of a parole revocation proceeding is remedial rather than punitive. In the light of the differences between the two proceedings, revocation of parole is not interdicted under the double jeopardy provision of the Fifth Amendment of the United States Constitution by reason of the dismissal [with prejudice] of the indictment."), *aff'd,* 677 *F*.2d 225 (2d Cir.1982).

Although this Court has not addressed directly the question presented by this appeal, those federal court precedents clearly are consistent with both New Jersey's double jeopardy jurisprudence and our pronouncements on the nature and purpose of the Parole Act and the parole system generally. Both the Parole Act and the case law construing it verify that because the primary purpose of parole is rehabilitative, the act of revocation of parole should be viewed as an essential element of the parole procedures,

the primary purpose of which is to rehabilitate a prisoner in preparation for his or her eventual return to society. *See, e.g., In re Trantino Parole Application,* 89 *N.J.* 347, 357, 446 *A.*2d 104 (1982)(explaining permissibility of parole condition (reparation) under Parole Act depends on whether it is "conducive to the rehabilitation of an inmate").

The Appellate Division has once before addressed the question whether parole revocation constitutes "punishment" for double jeopardy purposes under either the federal or state constitutions. *New Jersey State Parole Bd. v. Mannson,* 220 *N.J.Super.* 566, 533 *A.*2d 58 (App.Div.1987), *certif. denied,* 110 *N.J.* 194, 540 *A.*2d 188 (1988). In *Mannson,* the Parole Board reopened Mannson's parole revocation hearing after the hearing officer had declared the hearing "concluded." *Id.* at 568–69, 533 *A.*2d 58. The court rejected Mannson's argument that that action violated the constitutional protections against double jeopardy, relying on *Jonas v. Wainwright, supra, Garcia, supra,* and *Hanahan, supra,* for the proposition that "the Fifth Amendment's double jeopardy clause does not apply to parole revocation proceedings." *Id.* at 572, 533 *A.*2d 58. The court found that the New Jersey Constitution provided no broader protection in that context. *Id.* at 573, 533 *A.*2d 58.

We concur with the reasoning underlying those precedents and conclude that parole revocation under the New Jersey Parole Act is remedial and rehabilitative in both its essential purpose and its essential effect. Thus, it cannot be viewed as punishment triggering the protections against double jeopardy of the state and federal constitutions. Parole revocation is not, as defendant asserts, primarily designed to punish parole violators.

The precedents relied on by defendant to support his contention that parole revocation constitutes punishment are inapposite. In *California Department of Corrections v. Morales,* 514 *U.S.* 499, 512–13, 115 *S.Ct.* 1597, 1604–05, 131 *L. Ed.*2d 588, 598–99 (1995), the Supreme Court suggested in dicta that a statute that would result in the actual delay of the release of prisoners from incarcer-

ation to parole could constitute punishment, but the Court neither addressed nor characterized the nature of parole revocation proceedings. In *Weaver v. Graham*, 450 *U.S.* 24, 33–36, 101 *S.Ct.* 960, 966–68, 67 *L. Ed.*2d 17, 26–28 (1981), the Court, without addressing parole revocation, invalidated a Florida statute that delayed the release of a prisoner to parole authorities by reducing his number of gain-time credits. In *Lindsey v. Washington*, 301 *U.S.* 397, 400–02, 57 *S.Ct.* 797, 798–99, 81 *L. Ed.* 1182, 1185–86 (1937), the Court held that a statute that changed the minimum prison term from one set by the legislature to one set by the parole board constituted an unconstitutional increase in punishment because it potentially delayed the release of a prisoner to parole authorities. Each of those cases concerned a legislative enactment that posed the potential of increasing the amount of time an inmate, sentenced and incarcerated prior to the enactment, would be required to serve in prison before becoming eligible for parole. Such statutes essentially altered the terms of the inmates' sentences—sentences that were unquestionably punitive—and altered the inmates' legitimate expectations of parole eligibility. The issues addressed by those cases are not analogous to the double-jeopardy claim raised by defendant's parole revocation. Parole revocation is the expected remedial sanction that results upon a violation of the understood conditions of parole. It does not constitute an *ex post facto* change in the original punitive sentence.

## C

Prosecution for absconding from parole under *N.J.S.A.* 2C:29–5b, on the other hand, is clearly intended to punish violators of that criminal code provision. The statute provides:

A person subject to parole commits a crime of the third degree if the person goes into hiding or leaves the State with a purpose of avoiding supervision. As used in this subsection, "parole" includes participation in the Intensive Supervision Program (ISP) established pursuant to the Rules Governing the Courts of the State of New Jersey. Abandoning a place of residence without the prior permission of or notice to the appropriate supervising authority shall constitute prima facie evidence that the person intended to avoid such supervision.

[*N.J.S.A.* 2C:29–5b.]

The statute, *L.* 1991, *c.* 34, was enacted in response to *State v. Clay*, 230 *N.J.Super.* 509, 553 *A.*2d 1356 (App.Div.1989), *aff'd*, 118 *N.J.* 251, 571 *A.*2d 295 (1990), which held that absconding from supervision while enrolled in the Intensive Supervision Program (ISP) did not constitute the crime of escape as defined by *N.J.S.A.* 2C:29–5a because ISP could not be regarded as "official detention" for purposes of that provision. *L.* 1991, *c.* 34; *see* Senate Judiciary Committee, *Statement to Senate Bill No. 2662* (Feb. 25, 1991).

By its terms, absconding from parole is a purposive crime that applies only to certain parole violators. In *State v. Graham*, 284 *N.J.Super.* 413, 416, 665 *A.*2d 769 (App.Div.1995), *certif. denied*, 144 *N.J.* 378, 676 *A.*2d 1092 (1996), the Appellate Division addressed the statutory requirement of purposeful avoidance of supervision:

> [E]ven though the abandonment of an approved residence would be a violation of a condition of parole that could justify a revocation of that parole, it would not constitute the predicate act required to convict a parolee of absconding. Instead, the State would have to show that after leaving an approved residence, the parolee somehow attempted to avoid parole supervision or apprehension, such as by residing at a location that was unknown to parole officials and failing to communicate with them.

The critical element of the absconding offense is the act of going into hiding or leaving the state for the purpose of avoiding parole supervision. In contrast, the mere finding of a violation of a condition of parole, absent any showing of the parolee's intent, can constitute a basis for revocation of parole. See *e.g. Board of Trustees of Youth Correctional Center v. Davis*, 147 *N.J.Super.* 540, 545, 371 *A.*2d 768 (1977)(holding hearing officer's findings, well founded in record, of violations of parole conditions were sufficient to justify board's determination to revoke parole). Clearly, the crime of absconding from parole is intended to reach conduct evincing a higher level of culpability than that minimally sufficient for the administrative sanction of parole revocation. The targeted conduct of the crime of absconding from parole evokes parallels to the crime of escape. It is only the purposeful avoidance of parole supervision that the legislature

determined to criminalize for the purposes of deterrence and retribution.

▪ Because the legislature determined to punish the conduct of absconding from parole under the criminal code, the issue presented is not conceptually different from what defendant describes as the more typical violation-of-parole case in which the defendant's violation of parole was based on the commission of a separate crime such as robbery. In the case of a parolee who commits a robbery, the parole revocation proceeding addresses the parolee's violation of the conditions of parole, and the criminal proceeding addresses the substantive crime of robbery. Here, defendant's parole was revoked because he violated the conditions of his parole, and he was convicted and sentenced for absconding from parole because his conduct, as acknowledged by his guilty plea, constituted a commission of that independent offense. In both cases, the criminal proceeding and the parole revocation proceeding are occasioned substantially by the same conduct, although defendant presumably could have faced parole revocation based solely on his failure to refrain from drug use and failure to attend out-patient drug counseling sessions. Each proceeding serves a distinctly different purpose. Because the purpose of the parole revocation proceeding is not punitive, the fact that defendant faced what may be viewed as multiple "sanctions" as a result of the same, or substantially the same, conduct does not violate the constitutional protections against double jeopardy.

## D

▪ Defendant also asserts that fundamental fairness should preclude the imposition of both parole revocation and criminal prosecution for the same conduct. We have explained, however, that the essential purpose, essential effect, and targeted conduct of the crime of absconding from parole are clearly distinct from those of the sanction of parole revocation. As a result of defendant's violation of the conditions of his parole, the Parole Board revoked his parole and ordered him to complete the adjusted

maximum sentence on his CDS conviction. Because he purposefully avoided parole supervision by abandoning his place of residence without prior permission of or notice to the appropriate supervising authority, and relocated out-of-state in a location unknown to parole officials, defendant was convicted of absconding from parole. We believe the imposition of both sanctions was not fundamentally unfair, and thus decline to apply the doctrine of fundamental fairness to prohibit what the constitutional protections against double jeopardy do not.

 We recently discussed the purpose and application of New Jersey's doctrine of fundamental fairness in *State v. P.Z.*, 152 *N.J.* 86, 117–119, 703 *A.*2d 901 (1997). This Court has applied the doctrine to address governmental action that "is constitutional but that, nonetheless, includes elements of oppression or harassment requiring court intervention." *Id.* at 118, 703 *A.*2d 901 (citing *Doe v. Poritz*, 142 *N.J.* 1, 108–09, 662 *A.*2d 367 (1995)). We explained that the doctrine of fundamental fairness " 'serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily.' " *Id.* at 117, 662 *A.*2d 367 (quoting *Doe v. Poritz, supra,* 142 *N.J.* at 108, 662 *A.*2d 367). The doctrine is intended to address "those rare cases where government action does not comport with 'commonly accepted standards of decency of conduct to which government must adhere....' " *Ibid.* (quoting *State v. Talbot,* 71 *N.J.* 160, 168, 364 *A.*2d 9 (1976)).

The combination of defendant's parole revocation and his absconding conviction does not justify application of New Jersey's fundamental fairness doctrine. There is no indication that either the Legislature in enacting *N.J.S.A.* 2C:29–5b, the State Parole Board in revoking defendant's parole, or the State in pursuing this prosecution, acted in a way that was unjust, arbitrary, or unduly oppressive.

## III

We next consider whether defendant should have received jail credit against his absconding sentence for the full time he spent in

custody between his arrest and sentencing on that charge. *Rule* 3:21–8 provides: "The defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." That rule has been interpreted to require credit only for " 'such confinement as is attributable to the arrest or other detention resulting from the particular offense.' " *State v. Allen*, 155 *N.J.Super.* 582, 585, 383 *A.2d* 138 (App.Div.)(quoting *State v. Council*, 137 *N.J.Super.* 306, 308, 349 *A.2d* 71 (App.Div.1975)), *certif. denied*, 77 *N.J.* 472, 391 *A.2d* 487 (1978); *see also State v. Hill*, 208 *N.J.Super.* 492, 495, 506 *A.2d* 373 (App.Div.)(holding *R.* 3:21–8 " 'only applies to confinement directly attributable to the particular offense giving rise to the initial incarceration' ") (quoting *In re Hinsinger*, 180 *N.J.Super.* 491, 499, 435 *A.2d* 850 (App.Div.1981)), *certif. denied*, 104 *N.J.* 412, 517 *A.2d* 411 (1986).

Defendant could have been returned to custody on two grounds—the violation of the terms of his parole and the arrest for absconding. Thus, defendant's detention was not necessarily attributable to the particular criminal offense for which he was later sentenced. In fact, the record suggests that defendant's return to custody arose under the parole warrant. His reimprisonment on June 16, 1995, apparently was attributable only to the parole violation and therefore was related derivatively to the original CDS offense. Furthermore, in revoking defendant's parole and ordering him to complete his adjusted maximum sentence on the CDS charge, the Parole Board credited defendant with the days he spent in incarceration from the date of his return to custody until the date of the Parole Board's Notice of Decision revoking his parole. In addition, the time defendant served in prison between the date of the Notice of Decision and the date of his sentencing for absconding also were credited towards defendant's original CDS sentence.

Neither the Criminal Code nor the Rules address the propriety or permissibility of giving an inmate jail credit against more than one sentence. However, New Jersey courts have adopted a

negative view of that practice. *See State v. Harvey*, 273 *N.J.Super.* 572, 575, 642 *A.*2d 1052 (App.Div.1994)("Duplicate or double credits should not be given."); *State v. Allen, supra*, 155 *N.J.Super.* at 585, 383 *A.*2d 138 ("To give [defendant] credit for the 127 days in both counties would bestow upon him an impermissible double credit."); *Lipschitz v. State*, 43 *N.J.Super.* 386, 389, 128 *A.*2d 728 (App.Div.1957)("[D]uplicate or double credit should not be given for time served.")

Defendant's argument for jail credit against his absconding charge relies on *State v. Beatty*, 128 *N.J.Super.* 488, 320 *A.*2d 514 (App.Div.1974), and *State v. Williams*, 266 *N.J.Super.* 154, 628 *A.*2d 837 (Law Div.1993), *overruled by Harvey, supra*, 273 *N.J.Super.* 572, 642 *A.*2d 1052. In *Beatty, supra*, 128 *N.J.Super.* at 490, 320 *A.*2d 514, the defendant was indicted on Union County robbery charges while serving a custodial term in a New York prison. Additionally, a detainer was lodged against the defendant based on a New Jersey parole violation. *Ibid.* Because of that detainer, the defendant was held by New York authorities for 166 days beyond the latest release date on his New York sentence. *Id.* at 490–91, 320 *A.*2d 514. The State argued that because the defendant's extended confinement in New York was the result of the detainer for violation of parole, not the robbery charges, the defendant should not be entitled to credit on the sentence for robbery. *Id.* at 491, 320 *A.*2d 514. The court disagreed, explaining:

> *R.* 3:21–8 expresses the public policy of the State and should be liberally construed. Defendant was detained in a New York institution because of action taken by New Jersey, and whether that action finds its source in the robbery charge or the violation of parole charge is in our view immaterial. We accordingly hold that defendant is entitled to receive credit against his sentences for the 166 days that he was detained in the New York penal institution.
>
> [*Ibid.*]

Like defendant's sentence for absconding from parole, Beatty's sentences on the robbery charges had been ordered to run concurrently with the sentences then being served. *Id.* at 490, 320 *A.*2d 514.

In *Williams, supra,* 266 *N.J.Super.* at 156, 628 *A.*2d 837, the defendant was arrested for aggravated assault and related offenses on June 15, 1988, and a detainer was lodged on June 16, 1988, alleging a violation of parole. Pursuant to *N.J.S.A.* 30:4-123.61(a), the parole board determined that there was probable cause to believe that Williams had violated a condition of his parole. *Ibid.* Williams was returned to prison on August 26, 1988, but his parole was never formally revoked. *Ibid.* Arguing against the application of jail credit towards the defendant's sentence for aggravated assault, the State contended that defendant could not have been released after the detainer had been lodged by the parole board. *Ibid.* The Law Division disagreed, finding that "[a] parolee charged with violation of parole need not be returned to custody. *N.J.A.C.* 10A:71–7.2. In fact, a parolee can be released even after probable cause has been found. *N.J.A.C.* 10A:71–7.9." *Ibid.* The court concluded that

> a defendant who is arrested on a new charge, committed while on parole, who was unable to raise bail and obtain his release, is entitled to an award of jail credit for the time served while awaiting disposition of the new charge, notwithstanding the fact that a detainer may have been lodged for a violation of parole. Until such time as his parole is actually violated his incarceration or confinement is attributable to the new offense, rather than the violation of parole, and he is therefore entitled to an award of credit. Once his parole is violated the credit will stop because his confinement is then attributable to the violation of parole and he is no longer entitled to an award of credit on any sentence that may thereafter be imposed for the new offense.
>
> [*Id.* at 158, 628 *A.*2d 837 (footnote omitted).]

In *Williams,* the court also expressed its understanding that a defendant in Williams's situation would not be awarded credit by the parole board against the violation of parole for the time served prior to formal parole revocation. *Id.* at 158 n. 1, 628 *A.*2d 837. It thus concluded that as a matter of fairness the defendant was entitled to the application of credit to the new charges. *Ibid.*

In *State v. Harvey, supra,* 273 *N.J.Super.* 572, 642 *A.*2d 1052, a case analogous to the issue presented in this appeal, the Appellate Division largely disavowed the Law Division's reasoning in *Williams.* In *Harvey,* the defendant, a parolee, was arrested and charged with two CDS offenses. *Id.* at 573, 642 *A.*2d 1052. Bail

was set at $15,000, but the defendant was unable to post bail. *Id.* at 573–74, 642 *A*.2d 1052. Three days after his initial detention on the CDS arrest, a parole detainer was lodged against the defendant pursuant to *N.J.S.A.* 30:4–123.62. *Id.* at 574, 642 *A*.2d 1052. As in this case, Harvey entered a negotiated plea of guilty to the new charges in exchange for the State's recommendation of a sentence to be served concurrently with any term imposed on his parole revocation. *Ibid.* The sentencing court, on imposing the recommended sentence, awarded defendant only three days of jail credit against the new term, representing the days defendant spent in jail on the new charges before the parole warrant was lodged. *Ibid.* The State Parole Board subsequently revoked the defendant's parole and credited the defendant with all of the days spent in custody from the date the detainer was lodged. *Ibid.*

The Appellate Division in *Harvey* affirmed the sentencing court's determination not to award credit for the entire period between defendant's arrest and sentencing on the new CDS charges. *Id.* at 577, 642 *A*.2d 1052. The court rejected the premise of *Williams, supra,* 266 *N.J.Super.* at 156, 628 *A*.2d 837, that a parolee can be released even after a detainer has been lodged and that his incarceration therefore is attributable to the new offense rather than the parole violation, on the ground that the court in *Williams* ignored the clear language of *N.J.S.A.* 30:4–123.62(a)(2). *Harvey, supra,* 273 *N.J.Super.* at 576, 642 *A*.2d 1052. That statutory subsection provides that "[n]o parolee held in custody on a parole warrant shall be entitled to release on bail." *N.J.S.A.* 30:4–123.62(a)(2). Based on that provision, the *Harvey* court determined:

> As long as the warrant is lodged, a parolee cannot be released. Thus the confinement is attributable to the original sentence. If the warrant is withdrawn or parole is not revoked and the defendant is not returned to custody, then jail time is credited against the new sentence.
>
> [273 *N.J.Super.* at 576, 642 *A*.2d 1052.]

The court also noted that, although in *Williams* the court presumed that the parole board would not grant the defendant credit for the time in custody from the lodging of the detainer until the

formal revocation of parole, Harvey was granted such credit by the parole board. *Id.* at 576–77 n. 3, 642 *A*.2d 1052. On that point, the facts here are clearly analogous to *Harvey*.

The *Harvey* court also attempted to distinguish *Beatty, supra,* 128 *N.J.Super.* 488, 320 *A*.2d 514, explaining that

in *Beatty* the issue was whether credit should be given at all, not whether to allocate it between the new charge and a parole violation.... There is no indication that the State argued that the credit should be allocated instead to incarceration resulting from the parole violation. The opinion is silent on whether Beatty's parole was formally revoked.

[273 *N.J.Super.* at 575–76, 642 *A*.2d 1052.]

The distinction drawn by the court in *Harvey* may not be entirely accurate. The court in *Beatty, supra,* 128 *N.J.Super.* at 490–91, 320 *A*.2d 514, noted that the defendant's sentence on the robbery charge was ordered to run "concurrent with sentences then being served," and that whether the detention of the defendant in a New York prison "finds its source in the robbery charge or the violation of parole charge is in our view immaterial." However, the allocation of jail credit issue presented by this appeal was presented more precisely to the Appellate Division in *Harvey* than it was in *Beatty.* For that reason, and based on the clear language of *N.J.S.A.* 30:4–123.62 prohibiting a parolee held on a parole warrant from being released on bail, we find *Harvey* to be the more persuasive precedent.

Defendant suggests that because the absconding sentence was ordered to run concurrently with his reimprisonment for violation of parole, a double credit is particularly appropriate. We note that the Supreme Court of Vermont has held that

when a defendant is incarcerated based on conduct that leads both to revocation of probation or parole and to conviction on new charges, the time spent in jail before the second sentence is imposed should be credited toward only the first sentence if the second is imposed consecutively, but toward both sentences if the second sentence is imposed concurrently.

[*State v. Blondin,* 164 *Vt.* 55, 665 *A*.2d 587, 592 (1995).]

However, the *Blondin* Court was not faced with statutory language analogous to *N.J.S.A.* 30:4–123.62, preventing a parolee held pursuant to a parole warrant from being released on bail.

 We hold that when a parolee is taken into custody on a parole warrant, the confinement is attributable to the original offense on which the parole was granted and not to any offense or offenses committed during the parolee's release. If the parole warrant is thereafter withdrawn or parole is not revoked, and the defendant is convicted and sentenced on new charges based on the same conduct that led to the initial parole warrant, then jail time should be credited against the new sentence. If parole is revoked, then the period of incarceration between the parolee's confinement pursuant to the parole warrant and the revocation of parole should be credited against any period of reimprisonment ordered by the parole board. Any period of confinement following the revocation of parole but before sentencing on the new offense also should be credited only against the original sentence, except in the rare case where the inmate has once again become parole eligible on the original offense but remains incarcerated because of the new offense.

 The record before the Court leaves open one question concerning the proper application of our holding to this defendant. A parole warrant issued for defendant's arrest on October 15, 1992. Defendant was returned to custody on June 16, 1995. Although defendant was indicted for absconding from parole in February 1993, the Adult Presentence Report indicates that an arrest warrant on that charge was not issued until June 26, 1995. The Report further indicates that the actual parole detainer for defendant's violation of parole was not filed until June 28, 1995, and that the actual arrest on the absconding charge did not take place until July 7, 1995. Defendant has conceded that his return to custody on June 16 was pursuant to the parole violation, not pursuant to the indictment for absconding; he seeks credit against the absconding sentence only from June 26, 1995, which he contends was the date of his arrest for absconding, until the date of sentence on that charge. The period of confinement between June 16 and June 26 was therefore properly credited only towards defendant's adjusted maximum sentence on the CDS conviction.

It appears from the record that defendant actually may have received a double credit for the period from June 26 until June 29, because he was still held in custody on a parole warrant pursuant to *N.J.S.A.* 30:4–123.62(a)(2). As the State did not object to the double three-day credit awarded by the sentencing court, we decline to modify that result.

## IV

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—none.