**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1692-18T1

MICHAEL WOOD,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted February 24, 2020 – Decided May 7, 2020

Before Judges Fasciale and Moynihan.

On appeal from the New Jersey State Parole Board.

Michael Wood, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Michael Wood was serving a ten-year term—subject to parole supervision for life (PSL), N.J.S.A. 2C:43-6.4, and five years of mandatory parole supervision (MS) under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2(c)—for first-degree aggravated sexual assault of a helpless or incapacitated victim, N.J.S.A. 2C:14-2(a)(7).  He appeals from respondent New Jersey State Parole Board's (Board) final decision affirming a two-member Board panel's decision to revoke his PSL and MS status and impose a fourteen-month future eligibility term (FET), arguing:

> [POINT I]
>
> THE PAROLE BOARD'S DECISION TO REVOKE . . . WOOD'S MANDATORY SUPERVISION WAS CONTRARY TO WRITTEN BOARD POLICY.
>
> [POINT II]
>
> THE DECISION TO REVOKE . . . WOOD'S MANDATORY SUPERVISION AND PSL IS IN CONTRAVENTION TO THE UNITED STATES CONSTITUTION'S 5TH AMENDMENT PROTECTION AGAINST DOUBLE JEOPARDY.
>
> [POINT III]
>
> THE BOARD PANEL DENIED . . . WOOD HIS RIGHT TO PROCEDURAL DUE PROCESS DUE TO THE BOARD PANEL'S VIOLATION OF WRITTEN BOARD POLICY BY FAILING TO PROVIDE A BOARD REPRESENTATIVE TO AID HIM THROUGHOUT HIS HEARING(S).

A-1692-18T1

We find no merit to these arguments and affirm.

Less than six months after Wood was released from custody in February 2018,[1] he admitted to the use of cocaine and alcohol; his use was later confirmed by a laboratory test. He, nonetheless, maintained his parole status with an added condition that he attend increased outpatient drug counseling. The next month, after receiving telephonic notification that Wood missed two counseling sessions, parole officers conducted a home visit during which Wood refused to provide a urine sample for prohibited-substance testing; he later refused again at the parole district office. A parole warrant was issued and Wood was charged with violating: PSL and MS Condition #12 for testing positive for and admitting cocaine use; PSL Condition #15 and MS Condition #16 for refusing to submit to drug and alcohol testing; and a violation of a special condition for testing positive for cocaine use and admitting alcohol use.

After hearing testimony from the parole officer and Wood at a violation hearing—at which Wood pleaded guilty to all violations with an explanation, and admitted that when he refused to submit a urine sample he was "definitely

---

[1] Wood had earlier been granted parole, but parole was revoked in April 2017 for violations, including residency violations, drug use, alcohol use, and possession of a cellphone with an active social networking application. He served a twelve-month term before his release that relates to this appeal.

dirty"—the hearing officer found clear and convincing evidence sustaining all violations and recommended revocation of PSL and MS and the imposition of a fourteen month FET on each.

The two-member panel found that Wood's commission of the violations was "serious" and that revocation was desirable in light of the numerous infractions, including use of alcohol which "was a factor in both [of Wood's] prior supervision violations" and the aggravated sexual assault. The panel determined Wood was "not amenable to supervision and a possible danger to the community." The Board affirmed the panel's revocation and FET.

Contrary to Wood's argument, that decision did not violate Board policy. Wood's argument grafts language from N.J.S.A. 30:4-123.60(b) which provides: "Any parolee who has seriously or persistently violated the conditions of his parole, may have his parole revoked and may be returned to custody pursuant to sections 18 and 19 of P.L. 1979, c. 441 (C. 30:4-123.62 and 30:4-123.63)." The Legislature, however, provided a different standard for PSL parolees. N.J.S.A. 30:4-123.51b(c) provides: "If the parolee violates a condition of a special sentence of parole supervision for life, the parolee shall be subject to the provisions of sections 16 through 19 and 21 of P.L. 1979, c. 441 (C. 30:4-123.60 through 30:4-123.63 and 30:4-123.65), and may be returned to prison." The

Legislature, by the plain language of the statutes, intended to vest the Board with authority to return a PSL parolee for any violation, not just serious and persistent violations.  See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 553 (2009) (noting that, when interpreting a statute, a court "look[s] first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." (quoting Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008))).

N.J.S.A. 2C:43-7.2(c)—the NERA statute—provides:

> During the term of parole supervision the defendant shall remain in release status in the community in the legal custody of the Commissioner of the Department of Corrections and shall be supervised by the . . . Board as if on parole and shall be subject to the provisions and conditions of section 3 of P.L. 1997, c. 117 (C. 30:4-123.51b).

Thus, a

> board panel shall have the authority, in accordance with the procedures and standards set forth in sections 15 through 21 of P.L. 1979, c. 441 (C. 30:4-123.59 through 30:4-123.65), to revoke the person's release status and return the person to custody for the remainder of the term or until it is determined, in accordance with regulations adopted by the board, that the person is again eligible for release consideration pursuant to section 9 of P.L. 1979, c. 441 (C. 30:4-123.53).
>
> [N.J.S.A. 30:4-123.51b(a).]

A-1692-18T1

That is, MS parole may be revoked if the parolee "seriously or persistently violated the conditions of his parole[.]" N.J.S.A. 30:4-123.60(b).

In that our limited standard of review allows us to "overturn the . . . Board's decisions only if they are arbitrary and capricious," Trantino v. N.J. State Parole Bd. (Trantino V), 166 N.J. 113, 201 (2001) (Baime, J., dissenting), we conclude the Board's decision that Wood's infractions were "serious" are supported by a preponderance of the evidence in the record, see Kosmin v. N.J. State Parole Bd., 363 N.J. Super. 28, 41-42 (App. Div. 2003), and is thus a proper exercise of its "discretionary assessment[] of a multiplicity of imponderables[,]" Trantino V, 166 N.J. at 201 (Baime, J., dissenting) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 10 (1979)). "To a greater degree than is the case with other administrative agencies, the . . . Board's decision-making function involves individualized discretionary appraisals." Ibid. (Baime, J., dissenting).

Wood's continued violations of the conditions of MS and PSL, starting with his original release which was revoked, and continuing despite being given the opportunity to address his substance abuse through outpatient counseling after using drugs and alcohol shortly after his most recent release, evidence his inability to take advantage of his parole status. The Board's determination that

6

that inability posed a danger to the community is well supported, especially considering that alcohol was a factor in Wood's commission of the aggravated sexual assault. We will not second-guess the Board's application of its considerable expertise in sustaining the panel's determinations. See, e.g., In re Vey, 272 N.J. Super. 199, 205-06 (App. Div. 1993), aff'd, 135 N.J. 306 (1994).

We also reject Wood's argument that the revocation of PSL and MS for the same offenses violates the double jeopardy clause of the federal and state constitutions. Our Supreme Court's holding in State v. Black, 153 N.J. 438 (1998), is applicable notwithstanding Wood's argument that it is inapposite because both parole statuses were revoked for the same conduct. Both PSL and MS are, obviously, parole statuses. The revocation of each "is remedial and rehabilitative in both its essential purpose and its essential effect. Thus, it cannot be viewed as punishment triggering the protections against double jeopardy of the state and federal constitutions. Parole revocation is not, as defendant asserts, primarily designed to punish parole violators." Id. at 451. In fact, the Black Court sanctioned parole revocation and prosecution for the same conduct that supported both the parole decision and the criminal charge of absconding from parole, N.J.S.A. 2C:29-5(b). 153 N.J. at 451-54.

A-1692-18T1

Wood mentions in his merits brief our observation in <u>Balagun v. N.J. Dep't of Corr.</u>, where we "noted that double jeopardy considerations may have application in some prison discipline situations." 361 N.J. Super. 199, 206 (App. Div. 2003). We continued:

> Apart from federal and state constitutional protections, we are "duty-bound to insure that administrative proceedings are conducted in accordance with common notions of fundamental fairness." We have also previously recognized that "there may arise cases in which it would be fundamentally unfair to permit repeated disciplinary prosecutions and sanctions for the same offense or conduct."
>
> [<u>Ibid.</u> (citation omitted) (quoting <u>Russo v. N.J. Dep't of Corr.</u>, 324 N.J. Super. 576, 585-86 (App. Div. 1999)).]

Our concern in <u>Balagun</u> was that the parolee may have been found guilty on one occasion for possession of "security threat group materials" and, after the material were "inexplicably returned to him," was found guilty eight months later of possession of some of the returned materials. <u>Id.</u> at 204. That circumstance—where "it would be fundamentally unfair to sanction a prisoner twice for possessing the same identical contraband that the prison should have confiscated after the first disciplinary proceeding," <u>id.</u> at 206—is not present here where the violations that formed the basis for Wood's revocation took place on different dates and involved disparate actions. We also note Wood did not

8

receive an FET for each violation; the fourteen-month term covered both revocations.

We determine Wood's remaining arguments, including that he "was denied the basic aid of a [B]oard representative" at his hearings, to be without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E). We agree with the Board's finding that the hearing officer advised Wood of his right to counsel, and that Wood waived that right. That decision is supported by credible evidence. R. 2:11-3(e)(1)(D). Wood signed an "Application for Attorney" form that explained how counsel may have been of assistance, indicating he did "not wish to apply for an attorney to be appointed to represent [him]."

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1692-18T1