864 A.2d 1136 (2005)
374 N.J. Super. 356
Michael PAZDEN, Petitioner-Appellant,
v.
NEW JERSEY STATE PAROLE BOARD, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued October 12, 2004.
Decided January 21, 2005.
*1138 Kevin McNulty, Newark, argued the cause for appellant (Gibbons, Del Deo, Dolan, Griffinger & Vecchione, attorneys; Lawrence S. Lustberg and Philip James Degnan, on the brief).
Walter C. Kowalski, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Mr. Kowalski, on the brief).
Before Judges A.A. RODRIGUEZ, WEISSBARD and HOENS.
The opinion of the court was delivered by
HOENS, J.A.D.
Michael Pazden appeals from the decision of the New Jersey State Parole Board denying his application for a modification of the special conditions of his parole. He challenges the special conditions on statutory and constitutional grounds, asserting that the conditions exceed the authority of the Parole Act, see N.J.S.A. 30:4-123.45 to -123.76, and, in the alternative, that they are void for vagueness. While we do not agree with Pazden's statutory challenge to the special conditions of his parole, we conclude that in general conditions of parole are subject to constitutional limitations and that in particular the conditions imposed on Pazden cannot withstand constitutional scrutiny. We therefore reverse and remand.
The essential facts of Pazden's underlying offense and conviction are not in dispute, but an explanation of those facts is necessary for an understanding of our analysis of his challenge to the special conditions. In short, Pazden and his brother were engaged in a business venture in the late 1980's and early 1990's as a part of which they planned to build a condominium complex in Clifton. As a means to that end, they created Riverview Village, Inc. (Riverview), a corporation which would be the vehicle for the construction and marketing of the units in the condominium complex. Riverview entered *1139 into an agreement for an option to purchase a fourteen-acre parcel where the project was to be built.
After entering into the option agreement, Riverview began to market units in the project to prospective purchasers. Those contracts required payment of a 10% deposit by the purchasers toward the price of each unit. Purchasers who desired certain upgrades to their units were required to make additional deposits to cover a portion of those costs. The contracts represented that the deposit money, including the additional deposits for upgrades, would be held by Riverview in an escrow account pending completion of the project. Between March 1989 and April 1990, Riverview entered into numerous contracts with individuals for purchase of units in the project.
According to the State's evidence, the Public Offering Statement (POS) utilized by Pazden was not approved by the Department of Community Affairs and was not accurate. Among other things, the deposit money was not held in escrow as required, but was instead used by Pazden to make payments to the owner of the land in furtherance of the continuation of the option contract. In addition, to the extent that the POS represented that Riverview was already the owner of the land on which the condominium project was to be built, it was false. While Pazden made significant payments to the landowner to preserve the option to purchase the parcel, eventually the project failed and none of the condominium units was ever built. Moreover, when the project failed, because the deposit money had not been held in an escrow account as promised, there were insufficient funds to reimburse all of those who had contracted to purchase units. Forty-three of the purchasers lost the money they had paid for their units.
Following a lengthy investigation, Pazden was named in two indictments. In the first, Indictment No. 93-12-1353-I, Pazden was charged with offenses including one count of second-degree theft by deception, N.J.S.A. 2C:20-4, forty-three counts of third-degree theft by deception, N.J.S.A. 2C:20-4, one count of second-degree theft by failure to make required disposition, N.J.S.A. 2C:20-9, forty-three counts of third-degree theft by failure to make required disposition, N.J.S.A. 2C:20-9, and forty-three counts of third-degree misapplication of entrusted property, N.J.S.A. 2C:21-15. In the second, Indictment No. 96-01-0016-I, he was named in two counts of fourth-degree uttering a forged instrument, N.J.S.A. 2C:21-1a(3). Part of the State's proofs at trial related to its assertion that in furtherance of the scheme, Pazden had intentionally used an unapproved and inaccurate version of the POS. The State's evidence also demonstrated that in an effort to cover the fact that the funds had not been repaid to purchasers, Pazden had issued reimbursement checks from Riverview payable to two purchasers and then had forged endorsements on those checks.
In 1996 a jury found Pazden guilty of 119 of the counts in Indictment No. 93-12-1353-I and of both counts of uttering a forged instrument contained in Indictment No. 96-01-0016-I. When interviewed in connection with the pre-sentence report, Pazden denied that he was guilty, acknowledged that many people had lost their money, and blamed that loss on his poor business decisions rather than on any criminal intent on his part.
Thereafter, Pazden was sentenced to a term of eight years, with a three-year period of parole ineligibility for second-degree theft by deception, with which all of the third-degree theft by deception counts were merged. He was sentenced as well to a concurrent term of eight years with a three-year period of parole ineligibility for *1140 the second-degree failure to make required disposition, with which all of the third-degree failure to make required disposition counts merged. He was also sentenced to consecutive four-year terms on each of two of the misapplication of funds counts, with which all of the other counts for misapplication of funds merged. On the separate charges for uttering forged instruments, Pazden was sentenced to a one-year term to be served concurrently with the previously imposed terms. Therefore, Pazden was sentenced to an aggregate sentence of sixteen years with a three-year period of parole ineligibility. This court affirmed Pazden's conviction on direct appeal, State v. Pazden, No. A-7013-95T4 (App. Div. June 17, 1999), but remanded for further consideration of whether it was appropriate to impose consecutive sentences for the misappropriation of funds counts.[1]
Pazden served approximately four years of his sentence in prison and was released on parole. The original Certificate of Parole, issued December 28, 2000, subjected Pazden to standard conditions of parole, namely, that he obey all laws, that he report to his parole officer on a regular basis, that he notify his parole officer if he were arrested, if he were the subject of a criminal complaint, if he moved or changed his employment, and other similar but standard conditions. That original certificate also imposed special conditions on Pazden's parole, including that he adhere to a restitution payment plan, that he submit to random urine testing and alcohol monitoring, that he refrain from contact with any of the victims of the crimes or with his co-defendant, and that he undergo thirty-six months of intensive supervision. The December 2000 Certificate of Parole also contained the following special condition: "You are to attempt to gain and maintain steady employment. If not working, participate in vocational training/educational program."
Following his release on parole, Pazden advised his parole officer that he had secured employment as a construction superintendent with TWC, Inc., and that the work involved renovating a restaurant. He reported that he was then earning a salary of $1000 per week and that he was receiving reimbursement for expenses in addition to his weekly salary. In that position, Pazden had no responsibility for any of the financial aspects of the work and was not engaged in dealing with the general public. That job ended late in May 2001. Early in July 2001, Pazden advised his parole officer that he had started working for his son, David, who had hired him as an independent contractor to design and build a home. That letter further advised that David was then residing in Japan where he could be reached by telephone.
A year later, Pazden's employment status changed. On July 12, 2002, his son David sent correspondence to Pazden's parole officer which advised that Pazden was then working as a construction superintendent for David's company, Who Land & Development, L.L.C., at a salary of $500 per week together with expenses. In or about October 2002, a new parole officer *1141 was assigned to Pazden's supervision. That officer became concerned about Pazden's employment in light of the nature of the offenses for which Pazden had originally been sentenced. In particular, the officer questioned whether Pazden's duties as a construction supervisor for Who Land might place him in a position in which he had actual, apparent or implied authority to receive money or deposits on behalf of that company. In part that concern was based on the fact that the correspondence from David utilized a New Jersey mailing address while David was employed overseas. In addition, the officer was concerned about certain of the evidence relating to Pazden's employment, in particular, Pazden's assertion that he was paid in cash and on an irregular basis. At about the same time, Pazden became less compliant with his reporting obligation and his payments toward restitution became less frequent. As a result of these questions and concerns, on October 30, 2002, the Adult Panel of Parole Board imposed two additional special conditions of parole on Pazden.
Those conditions, which are the subject of the challenge now before us, are as follows:
1. Subject is to refrain from engaging in any employment and/or business venture or dealing that would allow him to have actual, apparent or implied authority to act either on his own behalf and/or as an agent for any other person, corporation, joint venture, partnership (limited or otherwise), or any other corporate entity, that authorizes to accept, on behalf of himself and/or any third person, party and or corporate entity, any negotiable instrument(s) (including, but not limited to monies, currencies, checks, notes, stocks, bonds, certificates of deposits, drafts, bills of exchange, order bills or lading, etc.), deposits, escrows, earnest monies or instruments.
2. Subject shall refrain from entering or negotiating, on behalf of himself and/or any third person, party or corporation, any commercial or business-related contract(s) or agreement(s), written or oral, unless expressly authorized to do so by the New Jersey State Parole Board.
Included along with these additional special conditions was the following statement: "Justification: The Adult Panel is of the opinion that due to the nature and characteristics of the commitment offense the above-noted special conditions will lessen the likelihood of subject's return to criminal behavior."
Pazden wrote to the District Parole Supervisor requesting that the conditions be clarified. In that letter, Pazden described his duties with Who Land as follows:
In that capacity I do not receive deposits of any nature from purchasers nor do they pass through my hands. All deposits are received by an independent real estate broker who forwards them directly to my son's attorney who in turn deposits them in his trust account.
In my capacity as construction supervisor I have negotiated commercial and/or business related contracts, as Purchaser with subcontractors and suppliers and my continued employment as a construction supervisor will require that I continue to do so. In that facet of my employment I handle only monies of my son and daughter or their company. Both are intimately familiar with my personal history including the nature of the offenses for which I have been convicted.
His letter also requested that he be given specific permission to continue his employment with Who Land.
On December 18, 2002, counsel for Pazden applied to the Adult Panel of the Parole Board for a modification of the additional special conditions. On January *1142 31, 2003, following the receipt of further information concerning Pazden's employment, the Adult Panel denied his request. Its letter advised that:
given the nature and characteristics of Mr. Pazden's extensive array of commitment offenses, the special conditions imposed by the Adult Panel seek to lessen the likelihood of subject's return to criminal activity. Moreover, the Adult Panel believes that the special conditions are in the interest of advancing public safety by ensuring that subject does not become re-involved in any employment or business venture that may lead to the potential misappropriation of funds.
The Parole Board specifically rejected arguments raised through counsel that the additional special conditions were overly broad, unduly restrictive or otherwise constitutionally infirm.
Thereafter, Pazden's parole officer continued to gather information concerning Pazden's employment. In February 2003, Pazden was at a construction site hammering nails. The sign in front of the building site described it as an eight-condominium project and identified Who Land as the developer. In March, the parole officer received conflicting information concerning whether Pazden was being paid in cash or by check and was given copies of Pazden's paychecks, which were signed by David. Although David was still residing in Japan, these checks were drawn on New Jersey banks.
On July 30, 2003, Pazden appealed the denial of his request for a modification of the additional special conditions to the full Parole Board. On September 24, 2003, the State Parole Board affirmed the decision of the Adult Panel, concurring with the conclusion that the conditions were appropriate in light of the nature of the offenses for which Pazden was initially convicted and in light of continuing questions about his employment. This appeal followed.
We turn first to an analysis of Pazden's statutory challenge to the additional special conditions. On appeal, he asserts that these special conditions exceed the authority of the Parole Act, N.J.S.A. 30:4-123.45 to -123.76, because they are unnecessarily restrictive as they relate to employment and therefore interfere with Pazden's eventual re-entry into society. We reject this argument because we do not agree with the assertion that restrictions on employment, even broad restrictions on employment, fall outside of the statutory scope of permissible conditions of parole.
The Parole Act of 1979 includes authority to impose special conditions where they are "based on prior history of the parolee" and where they are "deemed reasonable in order to reduce the likelihood of recurrence of criminal or delinquent behavior." N.J.S.A. 30:4-123.59b; see N.J.A.C. 10A:71-6.4(e). In reviewing decisions relating to parole, our Supreme Court has held that we must apply the same deferential standard as applies more generally to agencies making decisions within their areas of expertise. See Trantino v. N.J. State Parole Bd., 154 N.J. 19, 25, 711 A.2d 260 (1998)(Trantino IV); cf. State v. Lavelle, 54 N.J. 315, 325, 255 A.2d 223 (1969). Indeed, respecting the grant or denial of release on parole itself, the Court has recently reiterated that such decisions "should not be reversed by a court unless found to be arbitrary ... or an abuse of discretion." Trantino IV, supra, 154 N.J. at 25, 711 A.2d 260.
In the only published decision of our Supreme Court addressing special conditions of parole, the Court concluded that prior precedents addressing conditions of probation provide an apt analogy. See In re Application of Thomas Trantino, 89 N.J. 347, 357-58, 446 A.2d 104 (1982)(Trantino II). There are a number of decisions to guide us respecting conditions *1143 of probation, each of which rests on an analysis of whether the particular conditions were reasonable. See, e.g., State v. Harris, 70 N.J. 586, 599, 362 A.2d 32 (1976)(holding that reasonableness is a statutory standard); State v. Bausch, 171 N.J.Super. 314, 322, 408 A.2d 1085 (App.Div.1979)(analyzing whether particular condition was reasonable and just), aff'd as modified, 83 N.J. 425, 416 A.2d 833 (1980). Applying these decisions as a part of its analysis, in Trantino II the Court enforced a special condition of parole that was reasonably related to the prisoner's eventual rehabilitation. See Trantino II, supra, 89 N.J. at 357, 446 A.2d 104.
Federal precedents addressing both probation and parole, likewise, focus on the relationship between the prohibited activity and the individual's eventual rehabilitation. See, e.g., United States v. Crandon, 173 F.3d 122, 127-28 (3d Cir.)(restriction on access to Internet was reasonably related to prevention of recidivism after conviction for receiving child pornography), cert. denied, 528 U.S. 855, 120 S.Ct. 138, 145 L.Ed.2d 118 (1999); United States v. Schiff, 876 F.2d 272, 275-76 (2d Cir.1989)(restriction against association with anti-tax groups was reasonably related to parole for tax fraud); United States v. Beros, 833 F.2d 455, 467 (3d Cir.1987)(restriction on holding union position and receiving union funds was reasonably related to prevention of future crime based on prior conviction for embezzlement and misuse of union funds); United States v. Tonry, 605 F.2d 144, 145-48 (5th Cir.1979)(restriction on political activity was reasonably related to conviction for election law violations). Other federal decisions, however, have rejected special conditions of parole where those conditions could not be justified as related to the rehabilitation of the parolee, the protection of society or the prevention of recidivistic behavior. See, e.g., Sobell v. Reed, 327 F.Supp. 1294, 1303-06 (S.D.N.Y.1971); Hyland v. Procunier, 311 F.Supp. 749, 750-51 (N.D.Cal.1970).
In light of the dearth of precedents, we turn to the language of the Parole Act itself. The Act specifically requires that there be a reasonable relationship between the special condition and the prior criminal acts of the particular parolee. See N.J.S.A. 30:4-123.59b. That reference necessarily guides our analysis here. For purposes of our statutory analysis only, we interpret the additional special conditions to be what the Parole Board argues that they are, namely, restrictions on certain types and aspects of employment that mirror the activities in which Pazden previously was engaged and which gave rise to his criminal conviction. We therefore deem the statutory attack on the conditions perhaps more broadly than Pazden intends, but we interpret it to be an assertion that general restrictions on employment, in the face of a requirement for payment of restitution, are beyond the scope of the Act. Plainly, that assertion must fail.
While it is true that part of Pazden's debt to society is represented by the restitution that he must make to the victims of the Riverview project, and while it is equally true that, absent steady employment, his ability to make restitution is compromised, we cannot say that in general a restriction on the type or kind of employment permitted as a condition of parole is impermissible. To be sure, where the originating offense is employment-related, part of the method of promoting rehabilitation and preventing recidivism may appropriately be defined in terms of permissible employment. Therefore to the extent that Pazden asserts that the Parole Act does not authorize a limitation on the type or kind of employment permitted as a special condition of his parole, we find his argument unpersuasive.
*1144 We turn then to Pazden's constitutional challenge to the additional special conditions of his parole. We start with the observation that the asserted infirmity in the special conditions imposed on Pazden lies not in the intention of the Parole Board to preclude him from a return to the kind of venture which gave rise to his original conviction, but in the manner in which it has attempted to do so. Analysis of that issue requires that we address the scope of constitutional limitations in general as well as their application to conditions of parole. We consider this novel question at length.
Our Supreme Court has held that both the Federal and State Constitutions make vague laws unenforceable. See State v. Cameron, 100 N.J. 586, 591, 498 A.2d 1217 (1985)(citing U.S. Const. amend. V; N.J. Const. art. I, ¶ 1). The Court has more recently recognized that the vagueness challenge is based on the notion that a vague statute effectively denies due process. See State v. Hoffman, 149 N.J. 564, 581, 695 A.2d 236 (1997). "A statute that is vague creates a denial of due process because of a failure to provide notice and warning to an individual that his or her conduct could subject that individual to criminal or quasi-criminal prosecution." Ibid. The United States Supreme Court has defined the concept of void for vagueness in terms of whether a statute or regulation gives a person of ordinary intelligence fair warning of what conduct is prohibited, so that he or she may comply with it, and whether it is specific enough to provide an explicit standard to guide its enforcement. See Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 227-28 (1972).
In addressing a challenge based on vagueness, however, the level of scrutiny to be applied varies depending on the nature of the particular regulation being analyzed. Criminal statutes, because of their potential penal consequences, are subjected to stricter scrutiny, see State v. Maldonado, 137 N.J. 536, 562, 645 A.2d 1165 (1994), than other statutes and regulations, as, for example, zoning regulations. See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362, 371-72 (1982). Similarly, statutes or regulations that infringe on other constitutional rights are generally subjected to a higher level of scrutiny when challenged on vagueness grounds. See Cameron, supra, 100 N.J. at 594, 498 A.2d 1217.
The vagueness challenge we address in this appeal, however, is further complicated by virtue of the fact that the regulation imposed on Pazden is included as a condition of his parole. Therefore, as the Parole Board points out, certain of the protections that give rise to the greater level of scrutiny simply do not apply. Many rights, including free speech and assembly, may permissibly be restricted as a condition of parole. Challenges to restrictions on those very fundamental rights have previously withstood constitutional challenges. See Morrissey v. Brewer, 408 U.S. 471, 477-83, 92 S.Ct. 2593, 2598-601, 33 L.Ed.2d 484, 492-95 (1972). Moreover, in light of the fact that parole itself is inherently subjective and in light of the fact that there is no right to parole, see Greenholtz v. Inmates, 442 U.S. 1, 9-11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668, 676-78 (1979); State v. Black, 153 N.J. 438, 447-48, 710 A.2d 428 (1998), the Parole Board urges us to apply a lesser standard of scrutiny in determining whether these special conditions are constitutionally infirm.
While Pazden certainly had no right to be released on parole and while parole decisions are highly individualized and discretionary, see Trantino v. N.J. State Parole Bd., 166 N.J. 113, 173, 764 A.2d 940 (2001)(Trantino VI), we think it *1145 appropriate to apply the strictest level of scrutiny to the special conditions imposed on him after his release. The potential consequence to the parolee of violating a special condition of parole is critical to our analysis. First, as with laws that carry penal enforcement, Pazden's failure to comply carries with it the very real threat of incarceration. Second, as with laws of that significance, enforcement should not be left open to broad interpretation nor to the personal view of any particular parole officer. To be sure, the full panoply of due process rights does not apply to persons on parole or to persons charged with violations of parole. See Morrissey, supra, 408 U.S. at 480, 92 S.Ct. at 2599, 33 L.Ed.2d at 494; Black, supra, 153 N.J. at 448-49, 710 A.2d 428. Nonetheless, we think it plain that a special condition of parole that cannot pass constitutional muster in the same strict sense that we demand of other statutes with penal consequences must fail.
In general, in order to survive a vagueness challenge, a statute "must enable a person of `common intelligence, in light of ordinary experience' to understand whether contemplated conduct is lawful." Cameron, supra, 100 N.J. at 591, 498 A.2d 1217 (quoting State v. Lashinsky, 81 N.J. 1, 18, 404 A.2d 1121 (1979)); see State v. Malik, 365 N.J.Super. 267, 281-82, 839 A.2d 67 (App.Div.2003) certif. denied, 180 N.J. 354, 851 A.2d 648 (2004); State v. Golin, 363 N.J.Super. 474, 482-83, 833 A.2d 660 (App.Div.2003)(citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983)). Thus, "[a] law is void as a matter of due process if it is so vague that persons `of common intelligence must necessarily guess at its meaning and differ as to its application.'" Town Tobacconist v. Kimmelman, 94 N.J. 85, 118, 462 A.2d 573 (1983)(quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)); Lashinsky, supra, 81 N.J. at 17, 404 A.2d 1121; see also Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115 (1972).
Nor is it sufficient, in our view, to suggest that these special conditions of parole are constitutionally valid because Pazden can inquire of his parole officer concerning an interpretation should a question arise. The United States Court of Appeals for the Third Circuit has rejected a similar argument respecting conditions of probation. See United States v. Loy, 237 F.3d 251, 266 (3d Cir.2001). That court commented that a condition with no clear core meaning cannot be cured by relying on the right to seek an interpretation from a probation officer. Ibid. The court noted that to do so would impermissibly grant "the probation officer an unfettered power of interpretation, as this would create one of the very problems against which the vagueness doctrine is meant to protect, i.e., the delegation of `basic policy matters [ ... ] for resolution on an ad hoc and subjective basis.'" Ibid. (citing Grayned, supra, 408 U.S. at 109, 92 S.Ct. at 2299, 33 L.Ed.2d at 228).
We agree with the Third Circuit's approach. Moreover, we conclude that its analysis is applicable as well in the context of a challenge to conditions of parole. To the extent that the condition is one that the person of ordinary intelligence cannot understand, that constitutional defect cannot be cured by allowing an individual parole officer to interpret it. Permitting individualized interpretation in place of a condition that passes constitutional muster would instead leave the parolee to the mercy of one whose decision, while it might be entirely fair, might just as easily be otherwise. Such a system might also expose the parolee to changes in interpretation each time a new officer is assigned, itself an unworkable solution. The remedy for unconstitutional vagueness cannot be found in a system of individualized *1146 question and answer with one's parole officer, however well-intentioned.
Turning to the particular special conditions imposed on this parolee, we conclude that they cannot stand. Indeed, we would reach that conclusion regardless of the level of scrutiny to which we subjected them. The language used is on its face too wide-ranging, too all-encompassing, and too confusing in its description of what Pazden is prohibited from doing to be sustained.
We need not recite in detail all of the ways in which the conditions would prohibit entirely innocent activities, but instead provide a few examples to illustrate the failings of the conditions. Read on their face, they would prohibit Pazden from all but the most menial sorts of employment. They prohibit him from handling money, a restriction that would even prevent him for working as a grocery store cashier. More to the point, the language is so broad and imprecise that it would prevent him from entering into an entirely personal contract to lease a photocopying machine. Neither of these prohibitions is in any way reasonably related to his parole or his eventual rehabilitation.
On appeal, the Parole Board urges us to find that the special conditions are obviously intended to preclude Pazden only from activity similar to the Riverview condominium scheme and that they are clearly so written. The Parole Board urges us to agree that the conditions are "sufficiently determinate that a person of common intelligence would understand them." Simply put, they are not. Nor is it enough, as the Parole Board urges, to argue that the parole officer assigned to Pazden will be able to interpret the conditions in a fashion that will be related to ensuring that he avoids employment that mirrors his prior criminal behavior. We conclude that the additional special conditions fail the constitutional test for vagueness, a defect that cannot be remedied by an ad hoc system of interpretation.
Without question, parole may be subject to limitations. It may be subject to special conditions designed to limit the likelihood that a particular parolee will return to activities for which he or she has previously been convicted. In Pazden's case, it is entirely appropriate to impose limitations on his activities to the extent that they mirror the scheme for which he was convicted and in which so many innocent persons were hurt financially. Nevertheless, the Parole Board has an obligation to do so in a manner consistent with our constitutional concepts and in a way that gives notice to a person of common intelligence what is allowed and what is not.
Our Supreme Court long ago described the dangers presented by laws and regulations that are vague, when it set forth the "important values" that such laws "offend" as follows:
First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.
[Cameron, supra, 100 N.J. at 591, 498 A.2d 1217 (quoting Grayned, supra, 408 U.S. at 108-09, 92 S.Ct. at 2298-99, 33 L.Ed.2d at 227-28).]
*1147 Because we find that the special conditions imposed on Pazden are not ones that can be understood by a person of common intelligence and ordinary experience, because one must, of necessity, guess at the particular meaning of the conditions, and because their breadth of language gives rise to a very real possibility that their application will be arbitrary, we conclude that they are void for vagueness. We therefore strike them as written from the conditions of Pazden's parole and we remand this matter in order to give the Parole Board the opportunity to redraft them in an appropriately constitutional form.
Reversed and remanded. We do not retain jurisdiction.
NOTES
[1] While the record does not include an amended Judgment of Conviction reflecting proceedings following that remand, the parties agree that Pazden's actual aggregate sentence was sixteen years with a three-year parole disqualifier He thereafter filed a petition for post-conviction relief which was withdrawn. In addition, Pazden filed a petition for a writ of habeas corpus in the United States District Court, see 28 U.S.C. § 2254, which was denied in September 2003. We were advised that he filed an appeal of that decision and that at the time of briefing, he was awaiting a certificate of appealability from the United States Court of Appeals for the Third Circuit. See 28 U.S.C. § 2253. We have not been further advised of the outcome, if any, of these federal proceedings.