**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1288-20

WILFREDO PUJOLS,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

              Argued January 25, 2022 – Decided March 9, 2022

              Before Judges Currier, DeAlmeida, and Smith.

              On appeal from the New Jersey State Parole Board.

              Morgan A. Birck, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Morgan A. Birck, of counsel and on the brief).

              Suzanne Davies, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Suzanne Davies, on the brief).

PER CURIAM

Appellant Wilfredo Pujols appeals from the order of the New Jersey State Parole Board (Board), denying him parole and establishing a 120-month future eligibility term (FET). For the reasons that follow, we affirm.

I.

Pujols is currently serving a term of life imprisonment with a mandatory minimum parole disqualifier of thirty years for his 1987 conviction on felony murder, aggravated manslaughter, and related charges. That sentence ran consecutive to a five-year term imposed for violating his probation.

Pujols' murder conviction arose from the discovery of the victim's partially disrobed body in the bedroom of her home. An autopsy revealed the victim died from asphyxia, secondary to ligature strangulation, and the death was classified as a homicide. A police investigation led to Pujols, who was the victim's daughter's boyfriend.

Pujols admitted that he broke into the victim's home to steal tools that belonged to her boyfriend. During the burglary, the victim returned home and went directly to her bedroom to change clothes. Pujols hid in the bedroom closet while she changed. After the victim left the room, Pujols exited the closet, found the victim's purse, and began searching for money. The victim returned to the

2

room, noticed Pujols in the bedroom and screamed. She ran towards the door, exclaiming that she was going to call the police. Pujols then tackled the victim and strangled her to death. He took money from her purse, threw the purse in a river, and left. Pujols was subsequently found guilty by a jury.

Since his conviction and sentence in 1988, Pujols has committed at least thirteen institutional disciplinary infractions, including six asterisk offenses.[1] His most recent infraction occurred in 2011, when he was found guilty of violating prohibited acts *.306[2] and *704.[3] Other infractions included: engaging in a romantic relationship with a Department of Corrections (DOC) nurse, sending threatening letters to the nurse's ex-husband, and possessing weapons while incarcerated.[4]

---

[1]  The sanctions for asterisk infractions include placement in detention, placement in administrative segregation, and the loss of 1185 days of commutation credits.

[2] N.J.A.C. 10A:4-4.1. Prohibited act *306 is defined as "conduct which disrupts or interferes with the security or orderly running of the correctional facility[.]"

[3] N.J.A.C. 10A:4-4.1. Prohibited act *704 is defined as "perpetrating frauds, deceptions, confidence games, riots, or escape plots[.]"

[4]  Pujols also violated prohibited acts N.J.A.C. 10A:4-4.1 *.005, *.202, and *.803.

Pujols first became eligible for parole on February 28, 2019. Prior to his eligibility date, a hearing officer referred the matter to a Board panel due to the serious nature of the underlying offense, i.e., murder, pursuant to N.J.A.C. 10A:71-3.15(b). On January 28, 2019, a two-member Board panel denied parole and referred the matter to a three-member panel for the establishment of an FET.

The two-member panel's decision was based on a number of factors, including Pujols' current incarceration for a multi-crime conviction; the facts and circumstances of the offense; his criminal record; the failure of probation, incarceration, and parole to deter his criminal behavior; his commission of numerous institutional disciplinary infractions resulting in loss of commutation time and detention in administrative segregation; insufficient problem resolution, namely, Pujols' lack of insight into his own criminal behavior and minimization of his conduct; and a risk assessment evaluation, which found Pujols was a moderate risk to recidivate.

In mitigation, the panel considered Pujols' minimal offense record, and noted that he had: participated in institutional programs and programs specific to behavior; favorable institutional reports; unsuccessfully attempted to enroll and participate in programs; achieved minimum custody status; restoration of his lost commutation time; also received a general educational diploma (GED).

A-1288-20

On March 20, 2019, a three-member panel imposed a 120-month FET in a detailed eight-page written decision. In doing so, the panel cited the same factors relied upon by the two-member panel in denying Pujols' parole. The three-member panel noted that after more than three decades in prison, Pujols remained unable to identify the causes of his violent behavior; persisted in minimizing his criminal conduct; did not understand the severity of his criminal behavior; and continued his anti-social, manipulative, and maladaptive behavior during incarceration. The Board found Pujols' explanations for his poor conduct while incarcerated to be unsatisfactory.

The Board also found the record showed that Pujols did not "understand the personality defects that have impelled you to act in a criminal manner on the street or an anti-social manner while incarcerat[ed]." Pujols consistently answered, "I was not thinking," to the Board's repeated requests to him to "provide insight" into his improper and concerning behavior. The Board found these responses insufficient, and concluded they demonstrated Pujols' "lack of insight."

The three-member panel made findings as to Pujols' ability to understand and explain his crimes and infractions:

You present as being unable to understand the motivations or triggers to your criminal decision-making.

. . . .

The Board panel finds that you are an individual who has yet to come to any understanding of his anti-social thought process; and [y]ou present as not having made adequate progress in the rehabilitative process to ensure similar behavior and decision-making does not occur again in the future.

The three-member panel imposed a 120-month FET.

The Board adopted the panels' findings. It rejected all of Pujols' arguments, including the argument that the panels failed to consider material facts, such as Pujols' current age and his nearly ten years without infractions. The Board listed its reasons for denial of parole as well as the reasons for mitigation. The Board found that Pujols' criminal behavior was "deeply rooted as evidenced by [his] many institutional infractions." It concluded that this finding "contradict[ed] [Pujols'] assertion of sufficient rehabilitation." After considering the aggregate of information available in the record, the Board affirmed the panels' decisions to deny parole and established a 120-month FET.

Pujols appealed the Board's final agency decision, and raises the following points on appeal:

    I.   THE PAROLE BOARD HAS NOT DEFINED THE STANDARDS BY WHICH IT DETERMINED

6

THAT THERE IS A SUBSTANTIAL LIKELIHOOD THAT MR. PUJOLS WILL COMMIT A CRIME IF RELEASED ON PAROLE. (Not Raised Below)

A. THE PAROLE BOARD'S USE OF "INSUFFICIENT PROBLEM RESOLUTION" AND "LACK OF INSIGHT" CONSTITUTES IMPROPER AD HOC RULEMAKING.

B. THE PAROLE BOARD'S USE OF "INSUFFICIENT PROBLEM RESOLUTION" AND "LACK OF INSIGHT" WITHOUT DEFINING THEM AND THEIR NEXUS TO THE ULTIMATE STATUTORY STANDARD CONSTITUTES AN ABUSE OF DISCRETION THAT VIOLATES THE REQUIRED RULEMAKING PROCESS.

C. THE USE OF THE CATCH-ALL PHRASE "ANY OTHER FACTORS DEEMED RELEVANT" DOES NOT ALLOW THE PAROLE BOARD TO DISPENSE WITH ITS RULEMAKING OBLIGATIONS.

II. THE PAROLE BOARD'S CHECKLIST METHODOLOGY OF DENYING MR. PUJOLS PAROLE FAILED TO ARTICULATE ITS BASIS FOR ITS DECISION IN A MANNER THAT PERMITS MEANINGFUL JUDICIAL REVIEW. (Partially Raised Below)

A. THE ROTE AND MECHANICAL PROCESS BY WHICH THE PAROLE BOARD CONSIDERED MR. PUJOLS'S

A-1288-20

PAROLE APPLICATION PRECLUDES MEANINGFUL JUDICIAL REVIEW.

B. THE PAROLE BOARD FAILED TO ASSESS DIRECT EMPIRICAL EVIDENCE OF NON-LIKELIHOOD OF FUTURE CRIMINALITY, INCLUDING [NINE] YEARS OF INFRACTION-FREE BEHAVIOR.

III. THE RECORD ESTABLISHED IN THIS CASE DOES NOT SATISFY THE REQUIREMENTS ON THE PAROLE ACT OF 1979 THAT THERE IS A SUBSTANTIAL LIKELIHOOD THAT MR. PUJOLS WILL COMMIT A CRIME IF RELEASED.

IV. THE PAROLE BOARD ACTED ARBITRARILY AND CAPRICIOUSLY IN ESTABLISHING A FUTURE ELIGIBILITY TERM INCONSISTENT WITH ITS OWN REGULATIONS.

II.

Our review of a decision of the parole board is "limited." Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004). We will not reverse the Board's decision "unless found to be arbitrary . . . or an abuse of discretion." Pazden v. N.J. State Parole Bd., 374 N.J. Super. 356, 366 (App. Div. 2005) (alteration in original) (quoting Trantino v. N.J. State Parole Bd. (Trantino IV), 154 N.J. 19, 25 (1998)). Unless the Board "went so far wide of the mark that a mistake must have been made," its decision must not be disturbed. N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 547 (App. Div. 1988).

In reviewing a final decision of the Board, we are obligated to "determine whether [the Board's] factual finding could have been reached on sufficient credible evidence in the whole record." Trantino v. N.J. State Parole Bd. (Trantino VI), 166 N.J. 113, 172 (2001) (quoting Trantino IV, 154 N.J. at 24). Specifically, we must consider: (1) whether the Board's action is consistent with the applicable law; (2) whether there is substantial credible evidence in the record as a whole to support its findings; and (3) whether in applying the law to the facts, the Board erroneously reached a conclusion that could not have been reasonably reached based on the relevant facts. Ibid. Credibility determinations by those who see and hear witnesses are afforded substantial deference. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587-88 (1988); Close v. Kordulak Bros., 44 N.J. 589, 599 (1965).

Because Pujols' offenses were committed in 1987, the governing standard at the time, N.J.S.A. 30:4-123.53(a), required his release on parole unless it was established "by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the law of this State if released on parole at such time." L. 1997, c. 213 § 1.

III.

A.

Pujols argues that the Board abused its discretion because "lack of insight" into a potential parolee's criminal conduct is amorphous and is not relevant to their current risk of recidivism. He contends that by using "insufficient problem resolution" and "lack of insight" as justification to deny parole and impose beyond standard length FETs, the Board is using factors that have not gone through the notice-and-comment process required under the Administrative Procedures Act (APA). Pujols contends that this constitutes ad hoc decision-making, and denies him, as well as other parole applicants, due process. See e.g., Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313 (1984). We disagree.

In determining whether to grant an inmate parole, the Board must consider the aggregate of all pertinent factors, see N.J.S.A. 30:4-123.53(a), including any factors in the non-exhaustive list set forth in N.J.A.C. 10A:71-3.11. We note an inmate's insight into the reasons for his violent criminal behavior is subsumed within at least four factors included in N.J.A.C. 10A:71-3.11(b): "(11) [d]ocumented changes in attitude toward self and others"; "(12) [d]ocumentation reflecting personal goals, personal strengths or motivation for law-abiding behavior"; "(13) [m]ental and emotional health"; and "(17) [s]tatements by the

10

inmate reflecting on the likelihood that he or she will commit another crime; the failure to cooperate in his or her own rehabilitation; or the reasonable expectation that he or she will violate conditions of parole."

We find the non-exhaustive list of factors in N.J.A.C. 10A:71-3.11 flexible enough to accommodate both phrases without a formal amendment through the APA, and we discern no abuse of discretion by the Board in using them in its final decision.

B.

Pujols next argues the Board was arbitrary and capricious, violating his due process rights. Pujols also contends the Board abused its discretion by adopting a rote "checklist" method of review that is arbitrary and capricious. The arguments are unpersuasive.

In reviewing the Board's determination of whether the standard for release has been met, courts must give due regard to the ability of the factfinder to judge credibility and, where an agency's expertise is a factor, to that expertise. State v. Locurto, 157 N.J. 463, 470-71 (1999); see, e.g., In re Polk, 90 N.J. 550, 578 (1982). This is especially so where, as here, the determination includes a prediction as to an inmate's future behavior, a prediction fraught with subjectivity, mandating broad discretion in the Board's decision-making

11

process.  Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016); Puchalski v. N.J. State Parole Bd., 104 N.J. Super. 294, 300 (App. Div. 1969).

It is well-established that such determinations are a critical component of the parole evaluation process.  See Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 9-10 (1979) ("The parole-release decision . . . depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult and sensitive task of evaluating the advisability of parole release."). The fact that such determinations are subjective, and that the concepts related to these determinations are not expressly defined through regulation, does not render their use improper.  Ibid.

The Board addressed Pujols' inability to identify and articulate the underlying reasons for his crimes as well as his institutional infractions.  It found that Pujols showed no appreciation or regard for the consequences of his choices and further found that Pujols' prior interactions with law enforcement agencies and parole had no apparent effect on his conduct.  In mitigation, the Board recognized Pujols' educational accomplishments and involvement in institutional programs, and it specifically considered Pujols' detailed letter of mitigation.  Ultimately, the Board had more than sufficient evidence in the

A-1288-20

record, including Pujols' own admissions before the Board, to support its finding that Pujols was likely to reoffend. See L. 1997, c. 213 § 1. We find that the Board did not go "so far wide of the mark that a mistake must have been made," and that its process was far from arbitrary and capricious. Cestari, 224 N.J. Super. at 547.

Pujols also argues that the Board was arbitrary and capricious in failing to consider: his age at the time of his offenses; the psychological report expressing that he is unlikely to reoffend; his academic achievement; his minimal supervision status; his lack of disciplinary infractions within the last ten years; his moderate LSI-R score, and numerous letters from family, friends, and prison staff that support approval of his parole. The Board considered the full record, including mitigating factors, in determining whether there is a likelihood of reoffending. See In re Parole Application of Trantino (Trantino II), 89 N.J. 347, 372 (1982). Again, we find sufficient credible evidence in the whole record to support the Board's decision. Trantino VI, 166 N.J. at 172.

## C.

Pujols argues the Board "failed to explain why almost [ten] years of no infractions, . . . [is] less indicative of future criminality than events that occurred many years and even decades prior."

13

A-1288-20

We disagree. The Board based its decision "on the aggregate of all pertinent factors." See N.J.A.C. 10A:71-3.11(a). The record shows that Pujols' nearly ten years of infraction-free conduct while incarcerated was considered by the Board. However, it was within the Board's discretionary power to weigh this mitigating factor against the remaining factors and conclude that a substantial likelihood existed that Pujols would commit another crime if released on parole. We find there is sufficient credible evidence in the whole record to support the Board's decision. Trantino VI, 166 N.J. at 172.

D.

Finally, Pujols contends the Board's decision to impose an extended term outside the administrative guidelines was unsupported by the record and violated existing law.

An inmate serving a sentence for murder is ordinarily assigned a twenty-seven-month FET after a denial of parole. N.J.A.C. 10A:71-3.21(a)(1). The Board, in its discretion, may add or deduct nine months to this FET. N.J.A.C. 10A:71-3.21(c). However, in cases where an ordinary FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior[,]" a three-member panel may impose a FET in excess of administrative guidelines. N.J.A.C. 10A:71-3.21(d). Further,

14

"[i]n making the determination that the establishment of a future parole eligibility date pursuant to (a) or (b) and (c) above is clearly inappropriate, the three-member panel shall consider the factors enumerated in N.J.A.C. 10A:71-3.11." Ibid. We do not substitute our judgment for that of the Board with respect to denial of parole or the setting of a FET. In re Polk, 90 N.J. at 578; Cestari, 224 N.J. Super. at 547.

The Board's imposition of a lengthier FET on this record is neither arbitrary nor capricious. Pursuant to N.J.A.C. 10A:71-3.21(d)(4), the Board provided a written statement of reasons for the establishment of a FET differing from the presumptive guideline established in N.J.A.C 10A:71-3.21(a). The decision was supported by sufficient credible evidence in the record.

The Board noted evidence in the record, which we need not repeat at length here, which supported establishing a FET outside of the administrative guidelines. In addition to the Board's findings regarding Pujols' lack of insight into his street crimes, the Board found that six of Pujols' institutional infractions were serious in nature and evidenced his lack of understanding of the "personality defects that impelled" him to act in an "anti-social manner."

We conclude the Board was well within its discretion to impose the FET. See Trantino IV, 154 N.J. at 24 (citing Brady v. Dep't of Pers., 149 N.J. 224,

15

256 (1997)). <u>See, e.g.</u>, <u>McGowan</u>, 347 N.J. Super. at 565 (upholding the establishment of a thirty-year FET). <u>See also</u> <u>Johnson v. Paparozzi</u>, 219 F. Supp.2d 635, 642-43 (D.N.J. 2002) (rejecting an inmate's argument that the setting of a 120-month FET was unconstitutional where the panel complies with the direction of N.J.A.C. 10A:71-3.21 and considers the twenty-three factors enumerated in N.J.A.C. 10:71-3.11).

To the extent we have not addressed any of Pujols' arguments, we conclude they are without sufficient merit to warrant discission in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1288-20