**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2630-22

ANTOINE D'TO HAYES,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Argued September 12, 2024 – Decided September 25, 2024

Before Judges Gummer and Jacobs.

On appeal from the New Jersey State Parole Board.

Eric J. Marcy argued the cause for appellant (Lyons & Associates, PC, attorneys; Eric J. Marcy, of counsel and on the briefs).

Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher C. Josephson, on the brief).

Rebecca Uwakwe argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties Union of New Jersey Foundation, attorneys; Rebecca Uwakwe, Alexander Shalom, and Jeanne LoCicero, on the brief).

Claude Caroline Heffron argued the cause for amicus curiae Returning Citizens Support Group (Pashman Stein Walder Hayden, PC, attorneys; Claude Caroline Heffron and Jalen D. Porter, on the brief).

PER CURIAM

Antoine D'To Hayes appeals from a March 29, 2023 final decision of the Parole Board denying his application for early discharge from parole supervision. Besides seeking reversal of the Board's decision, Hayes asks for the first time on appeal that all parolees applying for early discharge be granted the right to appointed counsel and that we mandate the Board to adopt "minimum due process requirements" for parole discharge proceedings. Because the Board's decision was based on substantial evidence and was not arbitrary, capricious, or an abuse of its discretion, we affirm that decision without reaching appellant's post-hearing requests for relief.

I.

We draw the facts and procedural history from police and parole reports, a transcript of the early-discharge hearing, and court records. When he was fifteen and sixteen years-old respectively, Hayes committed a series of crimes

in Bergen County: two murders, kidnapping, robbery, "assault with intent to commit rape," "breaking and entering," and "atrocious assault and battery." Upon adoption of the current Criminal Code in 1978, "breaking and entering" (N.J.S.A. 2A:94-1) was then later codified as burglary (N.J.S.A. 2C:18-2), and atrocious assault and battery (N.J.S.A. 2A:90-1), as applicable to the elements of Hayes's conviction, was codified as aggravated sexual assault (N.J.S.A. 2C:14-2(a)(3) and (4)).

On June 21, 1975, Hayes broke into a woman's residence and killed her by strangulation. On October 16, 1975, he broke into the residence of another woman and "brutally attacked the [elderly woman] . . . , twisted her breasts, gagged and blindfolded her, forcefully introduced a toothbrush inside the victim's vagina, dragged her up and down the stairs and, finally, left her badly hurt . . . in a park in the early hours of the morning." On February 10, 1976, Hayes broke into the residence of a third victim, waiting for the sixty-four-year-old homeowner to return. When she arrived, he tied her with a telephone cord and drowned her in her bathtub.

The first murder charge was resolved in juvenile court. The charges for Hayes's second and third victims were tried by a jury following waiver from juvenile court. In June 1978, a jury convicted Hayes of murder, breaking and

3

entering, robbery, kidnapping, and assault with intent to commit rape. The trial judge sentenced Hayes to an aggregate term of life imprisonment, to serve a mandatory minimum of thirty years. In 2007, after considering whether Hayes's pre-2C Code convictions constituted a "sex offense" within the scope of Megan's Law (N.J.S.A. 2C:7-2(b)), this court affirmed the Department of Corrections' determination that Hayes was required to register as a sex offender, where he remains a Tier Two registrant.

Concerning appellant's parole history, we draw facts from police investigation reports, parole, and court records. Hayes was released from prison to the "Delaney Hall Halfway Back" program in August 2005. In May 2007, he was charged with violating program rules by entering an office at Delaney Hall without authorization. Hayes was adjudicated as having "violated the rules of the house (Delaney Hall) and because of this violation[,] he was removed from the facility." Notwithstanding this violation, in August 2007, Hayes was deemed to have successfully completed the program and continued on parole supervision with electronic monitoring.

On January 27, 2010, the West Windsor Police Department arrested and charged Hayes with shoplifting. The charges were referred to municipal court,

where he was adjudicated guilty of a municipal ordinance and assessed fines as punishment. A violation hearing resulted in continued parole supervision.

On July 5, 2013, Hayes was in a retail store parking lot in West Windsor, New Jersey. Also present was a female shopper, S.B., who had just finished shopping at the store.[1] S.B. loaded purchases into her car, placed her purse between the driver and front passenger seats, and returned the cart. Arriving back at her car, S.B. saw Hayes walking away with her purse. She yelled for him to bring it back. Hayes threw the purse onto the hood of S.B.'s car and said, "It fell out of your car." Purse now in hand, S.B. told Hayes, "You better not have taken anything." In response, Hayes walked toward S.B., wrestled the purse from her grasp, and threw it several parking spaces away before he entered another vehicle and drove off.

The police report contained the statements of two witnesses who observed the struggle over S.B.'s purse and included details of the incident consistent with S.B.'s description. The report noted that two video surveillance recordings from separate angles in the store parking lot corroborated her account.

---

[1] We refer to the individual involved in this appeal by initials to protect her privacy. See R. 1:38-3(c)(9).

Police charged Hayes with second-degree robbery. Waiving grand jury presentation, Hayes pleaded guilty to an accusation charging fourth-degree theft by unlawful taking (N.J.S.A. 2C:20-3) and was sentenced in October 2014 to three years' probation. Following a parole revocation hearing, a Board panel found a violation for "failure to obey laws and ordinances" but voted to continue Hayes on parole supervision.

<u>The Early Discharge Hearing</u>

In September 2021, Hayes requested an early discharge from parole supervision pursuant to N.J.A.C. 10A:71-6.9. A District Parole Supervisor and Supervising Parole Officer recommended to the Director of the Division of Parole that Hayes be discharged from parole. The Division then prepared a report outlining the recommendation from supervisory staff to present to the Board.

Among the documents collected for the Board's consideration were appellant's chronological parole supervision reports, psychological reports, and favorable recommendations from supervisory staff. On October 19, 2022, Hayes appeared before the Board. When asked to introduce himself, he said, "Well, my case is simply that this is who I am today as opposed to who I was then." Regarding his upbringing, Hayes reported that his father used to beat him

6

and his mother "used to do things, say things," which he "internalized . . . then struck out as a kid." In response to a Board member's question about why he had gone "into people's homes uninvited without permission," Hayes explained he "was not mentally stable" and that he used to leave his home "under a psychosis state." He reported having had "a number of clinical situations and evaluations" and was told that "because of what [he] experienced as a child in the home, [he] was striking out and looking for some way to strike out but didn't have it within [him] to strike out within the home."

Another Board member asked, "Mr. Hayes, then you ultimately broke into your teacher's home and killed her, and the neighbor's home and killed her. What was it about those women that you chose them as victims?" Hayes responded he had not known that his teacher was one of his victims and he learned from "the counseling and the therapy over the years . . . that [he] was seeking refuge from [his] own home." Hayes claimed he had no specific animus toward those victims but that those women "were representative of [his] mother."

Regarding the 2013 incident at the retail store parking lot, a Board member asked Hayes why he committed the crime during a time in his life that

A-2630-22

he had a supportive wife and had been released from prison on parole. He responded:

> The purse was actually hanging from the door on the floor. Hanging from the door. It wasn't inside the thing. What I did was pick up the purse and close the door. I picked up the purse. And I was holding it. And holding it before looking for someone. At that point, I decided[,] let me take it inside because nobody was there.

The Board member then disclosed that the panel had access to the police report describing a surveillance video that contradicted Hayes's rendition of the incident. Hayes insisted he had recalled the incident accurately and that the angle of the surveillance footage was distorted. As he put it, "I understand how it looked, but it really was not like that." Concerning his guilty plea, Hayes said, "I settled for theft. Because I wanted to go to trial, and they could never get to trial. I had --." A Board member interrupted and said, "Sir, were you convicted and put on probation for three years?" Hayes responded, "Three years. Yes, ma'am." "While on parole?" "Yes, ma'am."

An extended discussion of the 2013 incident ensued. Hayes continued to downplay his culpability, maintaining, "[b]ut in my mind at the time, I wasn't trying to commit a crime. I wanted to go to trial to – to flesh it out. I had eight status hearings. They could never get to the point of, let's go to – I kept saying,

let's go to trial, let's go to trial, let's go to trial.  <u>I accepted the lesser plea to get it over with</u>[,] which was theft."  (Emphases added).

One Board member "struggled to believe" Hayes's explanation, commenting that "at [fifty-three] years old, that in no way is trying to help somebody."  The dialogue continued:

> MEMBER:  So at [fifty-three] this isn't an interaction. You -- you know that you can avoid one, and you know that you don't have to be jossling [sic] with some lady over her purse.  If she doesn't want your help, leave the purse and walk away.  But I have no idea why a 53-year-old man would be tusseling [sic] with a woman over her own -- own purse.  So --
>
> HAYES:  That --
>
> MEMBER:   -- it's a struggle for me to match what you're saying, [with] what the report read, you copped out to a crime.  That's your choice, but now you own it. (Indiscernible) –
>
> HAYES:  I couldn't help -- I couldn't help that.  But let me just –
>
> MEMBER:  Wait.  No wait.
>
> HAYES:  Okay
>
> MEMBER:  You can.  You can.  You -- no one forced you to plead guilty, sir, respectfully.  You chose to plead guilty.  So -- and, again, you're [fifty-three]. You're not a kid anymore.
>
> HAYES:  Uh-huh.

MEMBER:  You're almost a senior citizen at that point. So the idea that you engaged in this behavior, again, you're well into your life.  You had to deal with some very severe crimes previously.

HAYES:  Uh-huh.

MEMBER:  You served your time.  Got paroled.  It's just concerning that a guy who has a history of targeting women is now engaged in a struggle with a woman.  To me, it might be -- it might be a pattern of behavior. That's to me.

Another Board member asked Hayes why he was seeking early discharge. Hayes responded, "As I've said already, being on parole has never really been a problem.  Because for the most part I have done what I was supposed to do. Why I would like to be released is because I just want to have control of my own life at this point forward," ultimately expressing a wish to relocate to Virginia, where his family members live.

Following Hayes's testimony, the panel asked Parole Supervisor Sergeant Richard Hubbs for his input.  Sergeant Hubbs explained that his interactions with Hayes were "limited," but he recalled his original parole supervisor "was very passionate about . . . submitting this for early discharge consideration." Hubbs also remarked that he did not "know much more than what [the Board had] read about him," but the fact he had only limited interactions with Hayes

was "a good thing." Following deliberation, the Board voted seven to four to deny Hayes's request for early discharge from parole supervision.

On December 28, 2022, the Board issued a written decision memorializing its earlier vote, elaborating, "it was determined that [Hayes] lacked candor . . . regarding [his] adjustment to parole supervision." The Board also noted that Hayes "continued to provide statements that were contrary to the official record of [his] conviction for the offense of [t]heft by [u]nlawful [t]aking, which [Hayes] committed on July 5, 2013, while on parole supervision." Last, the Board noted that the "official police version and video evidence regarding this offense detailed an unprovoked crime committed by [Hayes] that contradicted [his] statements provided during [his] testimony before the Board. Based on the deceptive information provided by [Hayes], the Board determined that [he] failed to meet the criteria for [c]onsideration for [e]arly [d]ischarge."

Administrative Appeal

Hayes appealed from the Board's decision. Among his salient arguments, he maintained that, "[i]t doesn't matter if what I conveyed was incongruent with another version. The police report merely serves as another point of view and there can be differing points of view." Hayes charged that, "what I was saying was purposely being taken out of context by the questioner." He further argued:

> I was compliant with all of the established criteria for consideration of discharge from parole and yet I was denied, thereby creating an untenable situation . . . because there's nothing more that I could do other than just serve more time on parole simply for the whimsical, capricious, and arbitrary predilection of one or more Board[] members.

Finally, Hayes complained that the tenor of the hearing was accusatory, with "at least two members" being "driven by their perceived personal belief that I have not been punished enough" and another being "unnecessarily vociferous while partaking in reading some sort of transcript."

On January 27, 2023, the Board issued a final decision affirming the denial of his request for early discharge from parole supervision. In it, the Board's Executive Director recited the procedural history, including Hayes's violations from 2007 (Delaney Hall), 2010 (shoplifting) and 2013 (theft by unlawful taking). The Board also recited favorable recommendations made by the Division. The Director noted, "[a]fter an in-depth discussion with you, and after careful consideration of all the facts of your case, the Board determined that the circumstances of your case did not meet the criteria for Consideration for Early Discharge from parole supervision. Accordingly, your request was denied." The Director explained:

> [t]he Board finds it concerning that you significantly downplayed your involvement in the [2013] offense.

Additionally, the Board finds that your October 2, 2014 conviction as a result of struggling with a woman while stealing her purse, coupled with your repetitive history of assaulting women, is of significant concern. Based on the deceptive information you provided, the Board determined that you failed to meet the criteria for Consideration for Early Discharge. In assessing your case, the Board determined that continued supervision is required in your case at this time.

Finally, the Board had rejected the assertion that its determination was arbitrary and capricious or that Hayes's "recounting of the [2013] incident" was taken out of context.

## II.

In May 2023, Hayes filed a notice of appeal from the decision. In the brief on appeal, he raises the following arguments:

I.   THE BOARD'S FINDING OF "LACK OF CANDOR" AND ITS FOCUS AND RELIANCE ON THE "OFFICIAL VERSION" OF A 2013 THEFT CONVICTION TO DENY EARLY DISCHARGE FROM PAROLE WAS IN ERROR REQUIRING A REVERSAL.

II.  THE BOARD'S DECISION WAS BASED ON AN INCOMPLETE RECORD, EXCLUDED TESTIMONY, AND RECENT MATERIAL DOCUMENTS THAT WERE NECESSARY FOR A FAIR DETERMINATION OF THE CONSIDERATION FOR EARLY DISCHARGE FROM PAROLE.

III.   THERE ARE TWO UNPUBLISHED CASES ADDRESSING A PAROLEE'S APPLICATION AND REVIEW FOR DETERMINING ELIGIBILITY FOR DISCHARGE FROM SUPERVISION – THE PAROLE BOARD NEEDS STANDARDS AND GUIDELINES FROM THE APPELLATE DIVISION IN CONDUCTING SUCH DETERMINATIONS [NOT RAISED BELOW].

IV.   PLAINTIFF WAS DENIED ACCESS TO "CONFIDENTIAL" RECORDS THAT WOULD HAVE PROVIDED SUBSTANTIAL SUPPORT WHICH HE COULD HAVE ADVANCED AT THE HEARING [NOT RAISED BELOW].

V.   PLAINTIFF REPRESENTED HIMSELF PRO SE, PAROLEES SHOULD HAVE COUNSEL TO ASSIST IN THIS STAGE OF LEGAL PROCEEDING [NOT RAISED BELOW].

As amicus, the American Civil Liberties Union of New Jersey, makes the following arguments:

I.   The Parole Board abused its discretion when it arbitrarily and capriciously denied Mr. Hayes discharge from parole.

A. The Parole Board violated express and implied legislative policies by denying Mr. Hayes discharge based on a "lack of candor."

B. The record does not contain any evidence sufficient to support the findings of the Parole Board.

14

C. The Parole Board's decision to deny Mr. Hayes discharge is repugnant to legislative policies.

II. The liberty interests at stake and the accusatory nature of the discharge hearing entitled Mr. Hayes to assistance of counsel as a requirement of due process.

A. A discharge hearing constitutes a hearing of an accusatory nature resulting in consequences of magnitude sufficient to require assistance of counsel.

B. The accusatory nature of parole discharge proceedings should trigger the right to counsel.

The other amicus, Returning Citizens Support Group, advances the following arguments:

Point I    THE PAROLE BOARD VIOLATED MR. HAYES'S DUE PROCESS RIGHTS BY DENYING HIM ACCESS TO THE COMPLETE RECORD, INCLUDING "CONFIDENTIAL" RECORDS, AND BY FAILING TO CONSIDER AND DISCOVER TO HIM MITIGATING EVIDENCE IN ITS POSSESSION.

A. Due Process and Fundamental Fairness Require Both [t]hat the Applicant Be Informed [a]s to What Comprises the Record and [t]hat He Be Given Access to All Materials [i]n the Record, Including Psychological Reports Marked "Confidential"

B. Due Process and Fundamental Fairness Require Both [t]hat [t]he Board Ensures Applicants Have

15

Access to Mitigating Information As Part of Its Discharge Decision

Point II    FAILURE TO DISCHARGE MR. HAYES, WHO MEETS ALL THREE PRONGS OF N.J.S.A. 30:4-123.66, FROM PAROLE IS AN ABUSE OF DISCRETION.

A. The Board Failed to Genuinely Apply the Three Prongs of N.J.S.A. 30:4-123.66, Relying Instead on the Impermissible Basis of "Lack of Candor" [t]o Deny Mr. Hayes Discharge from Parole.

B. To Determine Whether a Person Has Made a "Satisfactory Adjustment" to Parole [a]nd Whether They Are in "Constituted Need of Supervision," [t]he Board Should Consider Whether They Have Committed a New Offense and Whether They Have Complied [w]ith the Conditions of Parole.

C. Where, [a]s Here, All Three Prongs of the Discharge Statute [a]re Met, the Board Must Authorize[a]n Applicant's Discharge [f]rom Parole.

"Parole determinations . . . are entitled to deferential review by our courts." Acoli v. N.J. State Parole Bd., 250 N.J. 431, 454 (2022). "A mere difference of opinion is not a basis for a court to overturn a parole decision." Ibid. "The discretionary power exercised by the Parole Board, however, is not unlimited or absolute." Id. at 455. Consistent with "all agency decisions, those rendered by the Parole Board are subject to judicial review." Ibid. However, our scope of review is narrow. Berta v. N.J. State Parole Bd., 473 N.J. Super.

16

284, 302 (App. Div. 2022). "As a general matter, [the Appellate Division] will disturb an agency's adjudicatory decision only if [it] determine[s] that the decision is 'arbitrary, capricious or unreasonable' or is unsupported 'by substantial credible evidence in the record as a whole.'" Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

Determining if an agency decision is arbitrary, capricious, or unreasonable depends on:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

Although substantial deference is owed to the Board's decision, "our review is not 'perfunctory,' nor is it 'our function . . . merely [to] rubberstamp an agency's decision[.]'" Id. at 303 (quoting Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (second and third alterations in original)). Additionally, an agency is required "to explain its reasoning because that is '[o]ne of the best procedural protections against arbitrary exercise of

discretionary power . . . .'"  Ibid. (quoting Monks v. N.J. State Parole Bd., 58 N.J. 238, 245 (1971)).  Moreover, our "obligation to afford substantial deference to an agency's adjudicatory decision does not force [it] to turn a blind eye to a post-hoc justification – that is, a reason devised to justify a decision that was already made as a fait accompli for other unstated reasons."  Ibid.

The scope of our review defined, we next turn to the rubric of statutory and administrative provisions governing early discharge.  "Parole is a period of supervised release by which a prisoner is allowed to serve the final portion of his sentence outside the gates of the institution on certain terms and conditions, in order to prepare for his eventual return to society."  State v. DiAngelo, 434 N.J. Super. 443, 456 (App. Div. 2014) (quoting State v. Black, 153 N.J. 438, 447 (1998)).  Therefore, a discharge from parole constitutes an earlier termination of the sentence imposed.  Ibid.  "New Jersey prisoners have a protected liberty interest, rooted in the language of our parole statute, in parole release, and a resulting constitutional right to due process of law."  Thompson v. N.J. State Parole Bd., 210 N.J. Super. 107, 120 (App. Div. 1986).  In application, "[o]nly a few, basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context."  N.J. State Parole Bd. v. Byrne, 93 N.J. 192, 211 (1983).  Parolees are entitled to notice of the

pendency of a disposition, a statement of the reasons for any unfavorable decision, and an opportunity for a response. Ibid. The Board fulfilled those basic procedural elements of due process in determining Hayes's application for early discharge.

The Board's discretion in deciding whether to discharge a parolee is guided by N.J.S.A. 30:4-123.66 and N.J.A.C. 10A:71-6.9.

N.J.S.A. 30:4-123.66 states the following:

> Except as otherwise provided in subsection c. of section 2 of P.L. 1994, c. 130 (C. 2C:43-6.4), the appropriate board panel may give any parolee a complete discharge from parole prior to the expiration of the full maximum term for which he was sentenced or as authorized by the disposition, provided that such parolee has made a satisfactory adjustment while on parole, provided that continued supervision is not required, and provided the parolee has made full payment of any fine or restitution.
>
> [(Emphasis added).]

N.J.A.C. 10A:71-6.9(a)(1) to (4) states in relevant part:

> (a) The appropriate Board panel may grant any parolee a complete discharge from parole prior to the expiration of the maximum term for which he or she was sentenced, provided that:
>
> 1. Such parolee has made a satisfactory adjustment while on parole; and
>
> 2. Continued supervision is not required;

19

3. The parolee has made full payment of any fine or restitution and the parolee has made full payment or, in good faith, established a satisfactory payment schedule for any assessment, penalty, or lab fee; or

4. In the opinion of the Board panel, continued supervision is not warranted or appropriate based upon a review of the facts and circumstances considered pursuant to N.J.A.C. 10A:71-7.10, 7.11, 7.12, 7.16, and 7.17.[2]

[(Emphasis added).]

This same section also provides that "[a] decision to discharge an adult parolee serving a sentence for murder shall be rendered by the Board. The Board may require an adult parolee to appear for an interview before the Board prior to a decision being rendered." N.J.A.C. 10A:71-6.9(h) (emphasis added). By convening and requiring Hayes to appear before it for an interview, the Board exercised its discretion under this provision.

As referenced in his points of argument, Hayes contends the Board should have disclosed all of his psychological reports rather than relying on an incomplete set, some of which, according to Hayes, were dated and not reflective

_____

[2] N.J.A.C. 10A:71-7.10, 7.11, 7.12, 7.16, and 7.17 concern whether an individual on parole is subject to parole revocation and are thus inapplicable to our analysis.

of his progress in recent years.   We note that the Board considered a letter dated February 15, 2022, some eight months before the hearing, from psychologist Dr. Michael L. Nover.  Dr. Nover recounted Hayes's completion of "'active' sex offender treatment" in 2008 and his regular attendance at therapy appointments through February 8, 2022.  In that same letter, however, Dr. Nover erroneously claimed Hayes "has been in the community since his release from a half-way house in 2007 without reoffending or violating the conditions of his parole . . . ."  Dr. Nover's unawareness of Hayes's ordinance violation in 2010 and indictable conviction in 2014, however, undermines the legitimacy of the doctor's assessment of appellant's purported psychological progress and consequent recommendation for early discharge.

In assessing whether the Board properly exercised discretion in applying the three pertinent factors under N.J.A.C. 10A:71-6.9(a)(1) to (3), we focus on the essence of the dispute before us; namely, whether facial fulfillment of those factors mandates, or instead merely permits, early discharge.  Because his parole record is good, if not exceptional, and his fines and restitution have long been paid, Hayes contends he is mandatorily entitled to early discharge.  In contrast, the Board posits that notwithstanding payment of fines, restitution, and fulfillment of parole requirements, it is within the Board's discretion to find

21

continued supervision is required based upon Hayes's lack of candor when recounting the 2013 incident.

As emphasized, the controlling statute and regulation consistently employ the word "may" in delineating the Board's authority to grant or deny early discharge. Ordinarily, we construe "may" as a permissive term, suggesting that an actor has discretion to take or decline to take a given action, whereas "shall" is construed mandatorily, to mean that an actor has no such discretion. Harvey v. Bd. of Chosen Freeholders of Essex Cnty., 30 N.J. 381, 391 (1959) (elucidating that under the "plain meaning" rule of statutory construction, the word "may" ordinarily is permissive and the word "shall" generally is mandatory).[3]

When assessing adherence to a statutory or regulatory scheme, the "'paramount goal' is to determine the drafter's intent," which is generally found in the statute or regulation's "actual language." Ibid. (quoting U.S. Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012) (citing Bedford v. Riello, 195 N.J. 210, 221-

---

[3] We highlight that in contrast to the permissive rubric in the context of early discharge, there is a presumption of eligibility for one meeting the threshold criteria in seeking parole. See N.J.S.A. 30:4-123.51(e) ("Each adult inmate sentenced for an offense specified in N.J.S.2C:47-1 shall become primarily eligible for parole as follows . . . .") (emphasis added).

22 (2008)).  We do not "rearrange the wording of the regulation, if it is otherwise unambiguous, or engage in conjecture that will subvert its plain meaning."  Ibid. Where the plain language yields more than one plausible interpretation of the regulation, a reviewing court may consider extrinsic sources, including "the long-standing meaning ascribed to the language by the agency charged with its enforcement."  Bedford, 195 N.J. at 222 (citing Malone v. Fender, 80 N.J. 129, 137-38 (1979)).  If, however, the regulation's "language is clear, then the interpretative process will end without resort to extrinsic sources."  Ibid.

A plain reading of the pertinent language of the subject statute and regulations is clear.  Even so, neither Hayes nor amici point to any express legislative policy that has purportedly been violated.  See In re Carter, 191 N.J. at 482-83.  Instead, for example, the American Civil Liberties Union posits that upon meeting "three simple requirements" – (1) satisfactory adjustment; (2) lack of any need for supervision; and (3) paid restitution – a parolee should be entitled to "automatic" discharge.  We reject this reductionist view of the statutory framework.  The need for continued supervision is a judgment an agency devoted to that very question is uniquely suited to make.  Moreover, our own review of the legislative history reveals nothing to alter a plain reading and the discretionary nature of the Board's authority, provided that in making its

23                                                                                                    A-2630-22

decision the Board hews to the touchstones of reasonableness and substantial evidence.

## III.

We have carefully reviewed and reject appellant's contention that the record before the Board was insufficient to ensure a fair determination of appellant's request for early discharge. Notwithstanding the passage of time, or even because of it, appellant's refusal to accept culpability for a criminal act to which all available evidence points, and for which appellant pleaded guilty under oath, constitutes a profound lack of candor, if not deceptiveness.[4] It also bodes ill for his ability to recognize and abstain from criminal behavior in the future. Given this mindset, determining that Hayes could not lead a law-abiding life absent parole supervision was within the Board's discretion, resting on substantial evidence, and was not arbitrary, capricious, or unreasonable. N.J.A.C. 10A:71-6.9(a)(2). Appellant's contention that his access to confidential documents or submission of additional documents would have impacted the outcome is without merit. With respect to appellant's request that

---

[4] Hayes's refusal to admit culpability after having pleaded guilty contrasts starkly with defendants in Acoli and Berta, both of whom never pleaded guilty, continued to maintain their innocence after trial, and who we have held could not be made to admit guilt as a categorical prerequisite for parole. Acoli, 250 N.J. at 461-62; Berta, 473 N.J. Super. at 290.

we establish more detailed procedural criteria for early discharge proceedings, and permit or even require attorney participation, we decline to consider those measures under these circumstances.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2630-22